(No. 36920.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* LOREN A. DIVIT, Appellant.

*Opinion filed May 25, 1962.*

SUMMERS & WATSON, of Champaign, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, AUBREY KAPLAN, RAYMOND S. SARNOW, and A. ZOLA GROVES, Assistant Attorneys General, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

A petition for condemnation was filed in the county court of Kankakee County upon behalf of the State of Illinois to acquire .813 acres of land owned by the appellant, Loren A. Divit, for the purpose of constructing a highway interchange between Interstate Route No. 57, a planned cross-country freeway, and U.S. Route No. 54, an existing four-lane highway. Appellant filed a cross-petition alleging damages to his remaining 4.12 acres, and upon trial a verdict was returned awarding $38,500 for the land taken but nothing for damages to the remaining property. The condemnation of land being involved, direct appeal has been properly prosecuted to this court. Ill. Rev. Stat. 1959, chap. 47, par. 12.

Appellant's premises are situated upon the northwest corner of the intersection of U.S. Route 54, running generally north and south, and Armour Road, an east-west highway situated just north of Kankakee, and at the time the condemnation petition was filed it was improved with a gasoline service station, which adjoined Route 54, and a 43-unit motel to the rear. As situated, the property had equal frontage of approximately 466 feet upon, and direct access to, both Route 54 and Armour Road. Immediately north of the Divit tract was situated a combination restaurant and lounge.

Interstate Route 57 is planned as a completely controlled access highway with ingress or egress only at specified intervals and will ultimately run from Chicago through Kankakee County to Cairo where it will connect with other inter-

state systems. However, the only portion included in the instant project consists of a bypass for Route 54 commencing on the south edge of Kankakee and running along the easterly side of the city so as to terminate at its intersection with Route 54 about one-half mile north of the Divit property. Ramps for the Route 57 interchange run southerly from such intersection to a point some 1100 feet north of appellant's land, and when completed the north and southbound lanes of Route 54 will be separated by a median strip several feet in width extending from a point one thousand feet south of Armour Road to about one-half mile north of the Route 57 intersection. A frontage road to be constructed along the west side of Route 54 will furnish the only access from the adjoining properties to Route 54 but the Divit land will continue to have direct access to Armour Road. A traffic control light is contemplated for the intersection of Route 54 and Armour Road, which will be the first point of egress from Route 54 south of the Route 57 interchange.

To accomplish this construction, it was necessary for the State to acquire the easterly portion of the Divit property upon which the service station and a part of the motel parking lot were located. Whereas the right of way of Route 54 was formerly 132 feet from the motel, the new highway will run within 32 feet thereof. In addition, the restaurant and lounge property to the north will be entirely eliminated.

At the trial of this cause, two valuation witnesses were called by the State. Louis Ray, a Kankakee real-estate broker, testified that the highest and best use for the Divit land both before and after the highway improvement was for commercial and motel purposes. It was his belief that additional trade would result from the property's close proximity to the Route 57 interchange, and although he valued the land taken at $37,220, he felt the remaining portion of the Divit premises would be benefited rather than damaged by this highway construction. However, upon cross-examination the witness admitted that his original

valuation was based entirely upon reproduction costs and not what a buyer and seller would arrive at on an open market because "in my opinion reproduction costs would be less than the figure reached by buyer and seller relationship." He stated that the benefits he envisioned for the remaining property were based solely upon an expected increase in traffic but he admitted he had no idea how much traffic there would be on Route 57 or when such benefits might result.

The State's second witness was Willis Capps, a Wisconsin real-estate appraiser. Although he had not previously been acquainted with property in the Kankakee area, he and his assistants had in this case thoroughly examined the Divit premises, investigated the traffic situation, considered the cost and income approach, and examined courthouse records for sales in the immediate area. Based upon this information he valued the property taken at $38,500 and the initial damage to the remaining parcel at $15,000, but was of the opinion that the benefits to be derived from the expected traffic upon Route 57 would more than off-set the latter damage. He admitted there was then no traffic whatsoever upon the Route 57 interchange and that he had no idea when the project would be completed but insisted that the construction would ultimately increase traffic on both the freeway and Route 54. To support his belief he pointed out that by 1970 the automobile sales are expected to total nine million each year.

Three expert witnesses testified for the appellant. Oliver Patchett, who had been engaged in the real-estate and insurance business in Kankakee for the past 34 years, valued the property taken at $54,000 and the damage to the remainder at $21,250. He felt the loss of access, parking area, and service station would seriously affect the motel business. S. J. Beaupre, a Kankakee county realtor, fixed the value of the parcel taken at $54,597. He also believed the loss of access to Route 54 and the service station would depreciate the value of the remaining property, and was of the opinion

that the proposed Route 57 would take away a great portion of the Route 54 traffic and thus render the property less valuable for commercial uses. He placed the resulting damage at $20,673. The third witness, Maurice LeClaire, a Kankakee real-estate broker, pointed out that formerly no median strip separated the traffic lanes on Route 54, so that traffic approaching from either direction had direct egress to the motel and that direct access would be eliminated upon completion of the highway improvement. He estimated the value of the .813 acres taken at $55,000 and the damage to the property not taken at $35,000. He felt no benefit would be derived by appellant from Route 57 since it offered better access to other nearby motels and because the freeway would tend to reroute traffic away from Kankakee rather than attract it.

In urging a reversal of the judgment, the appellant contends the jury was improperly selected, that evidence was improperly permitted relative to improvements he had constructed subsequent to the filing of the condemnation petition, that the lower court erred in failing to strike the testimony of Ray and Capps concerning the value of the land taken, and that testimony concerning supposed benefits to the parcel not taken was speculative and incompetent.

It appears that on March 6, 1961, this case was set for trial, and on April 10, 1961, the trial judge issued a venire directing the sheriff to summon 20 persons to appear for jury duty on April 17. The sheriff telephoned various individuals in the county whom he thought would be physically and mentally able to serve, and upon the appointed date 17 prospective jurors appeared. Appellant moved to challenge the array but upon hearing the motion was denied. The statute (Ill. Rev. Stat. 1959, chap. 37, par. 282) provides that a county court jury may be drawn and summoned in the same manner as circuit court juries, or that the county court may direct the clerk to issue a venire to the sheriff as was done in the present case. Although the trial date had

been selected some time before, for aught that appears in the record the judge may well have had cause to delay the calling of a jury, and in the absence of contrary proof, it will be presumed the selection was in accordance with the statute. *Barr* v. *People,* 103 Ill. 110.

During the course of the trial, appellant was called by the State as an adverse witness and, over his counsel's objection, the appellee's attorney was permitted to interrogate him concerning a restaurant and cocktail lounge built upon the premises after the condemnation petition was filed. Louis Ray also volunteered the same information upon his direct examination. Since compensation for land taken for public use is to be determined as of the date the petition is filed, evidence concerning subsequent improvements is generally immaterial. (*Department of Public Works and Buildings* v. *McBride,* 338 Ill. 347; *People ex rel. Harding* v. *Atwater,* 362 Ill. 546.) However, in view of the fact that the lower court struck Ray's testimony in this respect and since appellant, in appearing upon his own behalf, later testified concerning these subsequent improvements, it cannot be said that reversible error resulted.

In support of his contention that the lower court erred in failing to strike the testimony of appellee's witnesses, Louis Ray and Willis Capps, concerning the value of land taken, appellant points out that the former based his opinion of value solely upon reproduction costs, and that the latter had no previous knowledge of Kankakee land values so as to qualify him as an expert.

We find that the testimony of Capps was competent. It is recognized in Illinois that any person acquainted with a particular property may testify as to its value even though he is not engaged in the buying and selling of similar properties in that locality. (*Department of Public Works* v. *Bohne,* 415 Ill. 253.) It is undisputed that Capps was a professional real estate appraiser and had for many years valued properties throughout the country, including Illinois. Prior

to trial he spent considerable time in examining the premises and investigating facts upon which to base his opinion as to the value of the property taken. Under the circumstances the trial court did not err in permitting him to testify. (Cf. *County Board of School Trustees* v. *Elliott,* 14 Ill.2d 440, 445.) However, the testimony of Louis Ray should have been stricken. The measure of damages for property taken is the amount for which the entire property would voluntarily sell, and although replacement or reproduction cost is one element which may be considered, it is not alone conclusive. (*Department of Public Works* v. *Pellini,* 7 Ill.2d 367; *Forest Preserve Dist.* v. *Chilvers,* 344 Ill. 573.) The test is not what the improvements originally cost or would cost if replaced, but rather the value of the land and buildings considered as a whole. (*City of Chicago* v. *Giedraitis,* 14 Ill.2d 45.) Since Ray based his opinion solely upon reproduction costs without regard to what a buyer and seller would agree upon, his testimony concerning the value of the land taken was improper. And since we cannot know the extent to which the jury was influenced by the improper standards employed by the latter witness, it necessarily follows that there must be a new trial to determine the value of the land taken.

The remaining issue is that of damages to the property not taken. Both Ray and Capps, in deciding that the benefits outweighed the damages sustained by the taking of a portion of the premises, based their opinions solely upon the increased traffic which they thought would result from the construction of Route 57, but neither of them had any idea when the freeway would be completed or the volume of traffic that could reasonably be expected thereon. Capps did state that automobile sales throughout this country are expected to increase from the present six million per year to nine million each year by 1970. The measure of damages for property not taken is the difference in the fair market value of the property as a whole before and after

the improvements and, in making this computation, special benefits accruing to the remaining parcel by reason of the improvement must be set-off against resulting damage. (*Kane* v. *City of Chicago,* 392 Ill. 172; *Capitol Building Co.* v. *City of Chicago,* 399 Ill. 113.) Yet such benefits must be real and substantial, not chimerical or speculative, and must be capable of measurement and computation. (*Washington Ice Co.* v. *City of Chicago,* 147 Ill. 327; *Metropolitan West Side Elevated Ry. Co.* v. *Stickney,* 150 Ill. 362; *City of Chicago* v. *Lonergan,* 196 Ill. 518.) Whereas the damage to be here sustained from the loss of direct access to Route 54, the taking of the service station, and the elimination of a part of the motel parking area, (the value of which was fixed by appellee's own witness, Willis Capps, at $15,000,) were present and real in character, the alleged offsetting special benefits were largely based upon conjecture. The witnesses agreed it was impossible to predict the volume of traffic which may ultimately use Route 57, or when this would occur, and there were no facts presented from which such benefits could be reasonably computed. In fact, Jerry Raffensperger, the Illinois right-of-way engineer for the Kankakee area, testified that upon completion of Route 57, through traffic on Route 54 would be eliminated except for service traffic, busses, laundry trucks, and bread trucks. There was no showing as to the frequency of the freeway interchanges, the amount of traffic which might choose to leave Route 57 at this point, or of any factors to indicate that this particular interchange was so situated as to especially encourage cross-country travelers to leave the freeway at its intersection with Route 54. Rather, the evidence indicated that no advertising would be allowed upon Route 57 and the only indication of a nearby motel would be the standard sign placed at all interchanges where such facilities are available. Certainly, any predictions as to future automobile sales are immaterial to the issue at hand. Having been based upon improper elements, the lower

court erred in failing to strike the testimony of Ray and Capps relative to the depreciation in value of the property not taken.

For the reasons stated the judgment of the county court of Kankakee County is reversed, and the cause is remanded for a new trial both as to the value of land taken and as to the damage to the remaining property.

*Reversed and remanded.*