THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Plaintiff-Appellee, v. HERITAGE STANDARD BANK AND TRUST COMPANY, as Trustee, *et al.*, Defendants-Appellants.

Second District   No. 2—89—0538

Opinion filed March 16, 1990.—Rehearing denied May 7, 1990.

6

8

Sandra Hebenstreit, of Righeimer, Martin & Cinquino, P.C., of Chicago, and S. Louis Rathje, of Rathje, Woodward, Dyer & Burt, of Wheaton (Leo N. Cinquino, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield, and Helm & Day, of Naperville (Stephen D. Helm, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Illinois State Toll Highway Authority, filed an eminent domain action against defendants, Heritage Standard Bank and Trust Company as trustee and Gallagher & Henry, Inc. Plaintiff condemned approximately 11.4 acres of land from a certain 40.5-acre parcel in Woodridge. The bank held title to the land as trustee, and Gallagher & Henry held the beneficial interest in the land trust. The jury awarded defendants $805,000 in just compensation for the land taken and awarded nothing on defendants' cross-petition for damage to the remainder. Defendants contend on appeal that a new trial is necessary because of the following alleged errors by the trial court: (1) allowing the jury to consider evidence of general benefits to the subject property; (2) failing to strike certain expert testimony presented by plaintiff; (3) failing to give an instruction proffered by defendants defining special benefits to the remainder and stating such benefits may only be set off against damage to the remainder; (4) refusing to admit into evidence an environmental-impact statement that contained an alleged admission against plaintiff's interest; (5) barring the admission of evidence that plaintiff paid damage to the remainder in settling an eminent domain action involving nearby property; (6) allowing counsel for plaintiff to ask improper questions and make improper comments during closing argument about a sale of nearby property; (7) allowing plaintiff to present a unilateral stipulation that it was willing to make certain landscaping improvements on the subject property; and (8) refusing to allow one of defendants' experts to testify about the cost of constructing sound-barrier fences. Defendants also contend that plaintiff's counsel improperly informed the jury during closing argument that they could not set off special benefits to the remainder

against just compensation for the property, inviting the jury to do just that and that plaintiff's counsel violated orders *in limine*. We affirm.

The subject property is located at the southwest corner of 71st Street and Woodward Avenue in Woodridge. Plaintiff acquired the 11.4-acre parcel because it was along the proposed route for the North-South Tollway. Plaintiff filed its complaint for condemnation on August 18, 1987, and received title to the property eight days later pursuant to the "quick-take" provisions of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 7—103 *et seq.*). At the time of the taking, the entire 40.5-acre parcel was zoned A-2s, which permitted the owner to use it for multifamily residences, for offices or certain other commercial uses. The land was vacant with the exception of an old barn.

Defendant filed a cross-petition alleging that the remaining 29.1-acre tract had been damaged by the taking. The matter was set for jury trial on January 30, 1989.

Thomas Buckley, who had worked as a professional land planner for 31 years, testified for plaintiff. Buckley felt that prior to the taking, the highest and best use for the subject property was low density multiple-family residences, with perhaps some single-family residences as well. Buckley held this opinion because the property was zoned to permit these uses, the trend of development in the area was for single-family residences, and the western and southern edges of the property adjoined land zoned for industrial and commercial usage, making multiple-family residences an appropriate buffer. Buckley felt that office was not the highest and best use prior to the taking because there were not enough good north-south roads in the area.

After the taking, however, Buckley felt the highest and best use of the property was as an office research park. Buckley noted that the remainder abutted the new tollway and was very close to the 75th Street interchange. Additionally, the zoning for the property permitted this use. Buckley also testified that the Village of Woodridge had reevaluated its comprehensive plan in 1985 because of the future impact of the tollway. The new plan designated the subject property for office or commercial usage.

Buckley stated that many properties located near the new tollway would benefit as a result of its construction. He testified that the subject property in particular would benefit because it was adjacent to the tollway, was undeveloped, and the tollway would change its highest and best use from multiple-family residences to an office research park. The trial court denied a defense motion to strike Buckley's testimony.

Charles Southcomb, who had been a real estate appraiser for over 16 years, also testified for plaintiff. Southcomb felt that the highest and best use for the property prior to the taking was for low- to medium-density townhouses or residential condominiums. He did not feel high density apartment use was appropriate because this would be contrary to trends in the area. He felt office usage was not the highest and best use prior to the taking because there were no good north-south thoroughfares nearby. According to Southcomb, the value of the property taken was $741,000. He based this valuation upon comparable land sales in Westmont, Downers Grove, and Naperville.

According to Southcomb, the highest and best use for the subject property after the taking was for an office research complex. Southcomb felt that the new tollway and its 75th Street interchange would give the property the necessary access to support development of an office research complex. Additionally, the property would abut the new tollway for a quarter of a mile, giving it increased visibility and advertising exposure, even though the tollway was being constructed below grade. These factors changed the highest and best use for the subject property. Southcomb felt there were no damages to the remainder because its value had increased to $125,000 per acre as a result of the new tollway. The trial court denied defendants' motion to strike Southcomb's testimony concerning damage to the remainder.

Frank Lorenz, who also testified for plaintiff, had 17 years of experience as a real estate appraiser. Lorenz belonged to the American Institute of Real Estate Appraisers and was designated an MAI by that organization. Lorenz felt that the 11.4-acre parcel condemned by plaintiff had a value of $684,000. Lorenz used comparable sales in Naperville, Westmont, and Darien as a basis for his valuation of the property. He testified that while Woodridge is a good community, it is not as prestigious as some other Du Page County municipalities such as Naperville, Lisle and Wheaton.

According to Lorenz, the highest and best use for the property after the taking was still for multiple-family residences. Lorenz stated that in his opinion there was no damage to the remainder, noting that, at the nearby Bristol Court apartment complex, rental prices were the same for apartments which would be adjacent to the tollway and those which would be farther away. Lorenz testified that the owners of this complex were using the new tollway as a marketing tool.

Robert Olson, who had been in the businesses of landscape architecture and city planning for 25 years, testified for defendants. Olson felt the highest and best use for the property both before and after the taking was for multiple-family residences, with 20 to 24 units per

acre. Olson felt that office usage would not be the highest and best use for the property, noting that visibility of the land from the tollway would be poor because the tollway was 15 to 35 feet below grade in that area. Olson also stated that there were no other offices in the immediate area, Woodward Avenue is primarily residential, and there was a great deal of land available for office development in Du Page County along the East-West corridor, a prime area for office development located along the East-West Tollway. Olson testified that the Du Page County comprehensive plan, adopted in 1985, projected residential usage for the subject property. Over the objection of defendants, the trial court permitted counsel for plaintiff to ask Olson on cross-examination whether the plan was adopted prior to the approval of the tollway. Olson stated that it was adopted before the tollway was approved.

William McCann, who had been working as a real estate appraiser since 1958, also testified for defendants. McCann was a member of the American Institute of Real Estate Appraisers and was designated an MAI by that organization. He testified that the highest and best use for the subject property before the taking was for multiple-family residences with a density of 15 to 20 units per acre. McCann felt that the value of the land taken was $1,240,000. His opinion was based upon comparable sales in Downers Grove, Wheaton, Lisle, Glen Ellyn, and Lombard.

In McCann's opinion, the same highest and best use for the subject property existed after the taking. McCann felt that the land was not a good site for an office because the trend in the area was toward residential usage, there is little demand for office usage in the area, visibility of the site from the tollway would not be good, and there was plenty of land available for office development along the East-West corridor.

According to McCann, the taking caused $305,000 in damage to the remainder. McCann felt there would be a need to take measures such as setting back any buildings, landscaping, or constructing a berm in order to combat noise from the tollway. Additionally, certain costs to develop the property would not vary substantially even though the parcel was now 29.1 acres instead of 40.5 acres. The expenses per acre for development would therefore increase as a result of the taking.

Neil King, a realtor, appraiser, and real estate counselor since 1955, also testified for defendants. King believed the highest and best use of the property, both before and after the taking, was for an apartment complex. King did not feel that an office building would be

the highest and best use because there was little demand for offices in the area and there were no offices on Woodward Avenue. He also stated that visibility of the site from the new tollway would be poor and there was plenty of available land for offices on the more prestigious East-West corridor.

According to King, the taking caused $400,000 in damage to the remainder. King felt that the increased accessibility that would result from the proximity of the property to the tollway was a positive factor, but this was outweighed by other factors, such as increased noise and increased expenses per acre to develop the land.

Mark Lucas, a civil engineer who worked on the tollway project for seven years, testified that 48,800 vehicles per day were projected to pass the subject property in 1989, the year the tollway was due to open. That figure would increase to 57,400 per day by the year 2008. Lucas stated that the view of the remainder from the tollway was good.

Over defendants' objection, the trial court permitted plaintiff to present a unilateral stipulation and instructed the jury that it was binding upon plaintiff. The stipulation states that plaintiff, at its sole expense, will provide the landscaping and screening set forth in a June 1988 plan on an area adjacent to the remainder and will delete certain trees from the plan if the owner of the remainder so requests within 60 days. This stipulation was presented at the close of the evidence.

The jury awarded defendants $805,000 as just compensation for the property taken and determined there was no damage to the remainder. The trial court denied defendants' post-trial motion, and the instant appeal ensued.

Defendants first argue that the trial court committed reversible error by permitting plaintiff to present evidence of general benefits to the remainder through the testimony of Thomas Buckley and Charles Southcomb, both of whom stated that the improved accessibility provided by the tollway and the 63d and 75th Street interchanges would benefit the remainder. Defendants contend that any benefits resulting to the property from these interchanges could only be considered special benefits if the interchanges were located on the property taken from them, which was not the case. Defendants also maintain that the benefits from the tollway itself, such as facilitating north-south travel in the region, are general benefits because they accrue to a large area.

When damage to property not taken is sought in an eminent domain proceeding, special benefits accruing to the remaining parcel

because of the improvement may be set off against the damages proved by defendant. (*Department of Public Works & Buildings v. Barton* (1939), 371 Ill. 11, 17; *Department of Public Works & Buildings v. Exchange National Bank* (1975), 31 Ill. App. 3d 88, 104.) Special benefits are benefits flowing from the public improvement which accrue only to the particular land or the immediate neighborhood and are not merely the advantages of progress flowing to the community at large. *Exchange National Bank*, 31 Ill. App. 3d at 102-03.

According to defendants, any benefits they will realize from the construction of the tollway are general benefits because they will accrue to many other property owners in the region. Benefits do not become general benefits merely because they are common to other properties in the area, however. (*Sanitary District v. Boening* (1915), 267 Ill. 118, 124; *Peoria, Bloomington & Champaign Traction Co. v. Vance* (1907), 225 Ill. 270, 273.) General benefits are those general, intangible benefits which are supposed to flow to the public from a public improvement and the effect of which cannot be ascertained in monetary value. (*Boening*, 267 Ill. at 124.) Any benefits to the property which enhance its market value and are not conjectural or speculative are considered special rather than general benefits. (267 Ill. at 124; *Brand v. Union Elevated R.R. Co.* (1913), 258 Ill. 133, 138.) This is because, if a parcel of land is enhanced in value by a public improvement, the enhancement or benefit cannot be considered common to any other parcel; therefore each parcel whose value is enhanced by the improvement is specially benefitted irrespective of the effect upon other properties. (*Brand*, 258 Ill. at 138.) Damage to the remainder in an eminent domain case is measured by establishing the difference between the fair market value of the land prior to the improvement and as affected by the improvement; this approach will take into account any special benefits to the property. *Department of Public Works & Buildings v. Barton* (1939), 371 Ill. 11, 17.

Thomas Buckley and Charles Southcomb both testified that the construction of the tollway transformed the highest and best use of the property from multiple-family residences to an office research facility. According to Southcomb, this increased the value of the remainder from $65,000 to $125,000 per acre. Both witnesses felt the fact that the remainder directly abutted the tollway would provide visibility to such a facility and the nearby interchanges would provide increased accessibility to the property. Additionally, Southcomb emphasized that the property was practically vacant, which meant there was no existing use that had to be taken into account in determining its highest and best use. The testimony of Buckley and Southcomb did

not concern intangible benefits common to the general public, but instead related to benefits accruing to the particular property from the tollway which, according to Southcomb, increased its market value. The fact that other properties in the area may have realized the same or similar benefits from the tollway does not make them general benefits, and we reject defendants' argument to the contrary.

Section 7—120 of the Code states in part as follows:

"In assessing damages or compensation for any taking or property acquisition under this Article, due consideration shall be given to any special benefit that will result to the property owner from any public improvement to be erected on such property." (Ill. Rev. Stat. 1987, ch. 110, par. 7—120.)

According to defendants, the above provision bars consideration of any benefits resulting to the remainder from the 63d and 75th Street interchanges because they were not located on the property taken from them. We disagree. The public improvement erected upon defendant's property is the tollway. The entrance and exit ramps at 63d and 75th Streets are a part of the tollway project. The ramps are therefore part of the improvement erected on the property taken from defendants. Section 7—120 did not, therefore, prohibit plaintiff from presenting evidence that defendants specially benefitted from the 63d and 75th Street interchanges.

Defendants further contend that consideration of special benefits from these interchanges was improper because defendants had no vested property rights in the interchanges and could not recover damages if they were closed. As we have seen, damage to the remainder is ascertained by determining the difference between the fair-market value of the property prior to the improvement and the fair-market value as affected by the improvement. (*Department of Public Works & Buildings v. Barton* (1939), 371 Ill. 11, 17.) The fair-market value of land is often affected by surrounding properties, even if the owner of the land in question has no vested rights in these neighboring properties and no control over their future use. Thus, we do not see anything improper or unreasonable about considering the special benefits received by the defendants as a result of the interchanges, even though the State could conceivably close the interchanges. We would also point out that an Arizona court has rejected the argument raised by defendant in a case with similar facts, stating as follows:

"The fact that a property owner obtains no vested right in a benefit does not preclude such benefit from having a monetary value if it qualifies under the definition of special benefits." (*Defnet Land & Investment Co. v. State ex rel. Herman* (1971),

14 Ariz. App. 96, 99, 480 P.2d 1013, 1016.)

We agree with this conclusion and reject defendants' contrary contention.

We also reject defendants' assertion that consideration of benefits from the tollway and the two interchanges denies them equal protection of the law under the United States and Illinois Constitutions. In support of this argument, defendants cite *Pierpont Inn, Inc. v. State* (1969), 70 Cal. 2d 282, 449 P.2d 737, 74 Cal. Rptr. 521, an inverse condemnation case in which the California Supreme Court upheld the trial court's ruling that there was no evidence of special benefits even though an expert witness testified that a freeway and off-ramp in the vicinity of the remainder would increase its value by more than $33,000 because the expert also testified that all properties in the area would receive the same benefits. *Pierpont Inn*, 70 Cal. 2d at 295-96, 449 P.2d at 746, 74 Cal. Rptr. at 530.

The court in *Pierpont Inn* then went on to quote a much earlier California case, stating as follows:

> " 'The chance that land will increase in value as population increases and new facilities for transportation and new markets are created is an element of value quite generally taken into consideration in the purchase of land in estimating its present market value. This chance for gain is the property of the landowner. If a part of his property is taken for the construction of the railway, he stands, in reference to other property not taken, like similar property owners in the neighborhood. His neighbors are not required to surrender their prospective enhancement of value in order to secure the increased facilities which the railroad will afford. If he is compelled to contribute all that he could possibly gain by the improvement, while others in all respects similarly affected by it are not required to do so, he does not receive the equal protection of the law.' " (70 Cal. 2d at 296, 449 P.2d at 746, 74 Cal. Rptr. at 530, quoting *Beveridge v. Lewis* (1902), 137 Cal. 619, 625, 70 P. 1083, 1086.)

Defendants cite the above quote in support of their equal protection argument.

■■ We are not persuaded by the reasoning of *Pierpont Inn*. In that case, there was testimony that the freeway and off-ramp increased the fair-market value of the remainder by an ascertainable amount, $33,481. Setting off this amount against the claimed damage to the remainder would not have resulted in a denial of equal protection, even if the same benefit accrued to many other properties in the area. The value of the remainder would have still increased, and the

owner would have received the same benefit as his or her neighbors, enhancement of the value of their property. The owner would not have been forced to contribute all he or she could have gained from the improvement, as the California courts maintain, but would have merely suffered a reduction in damages to the remainder. The equal protection concerns expressed in *Pierpont Inn* and by defendants are without merit.

We need not resolve the State's contention that special benefits to the remainder may also be set off against just compensation. Nevertheless, we would point out that this would seem to be prohibited by section 7—118 of the Code which, in referring to just compensation, states, "However, no benefits or advantages which may accrue to lands or property affected shall be set off against or deducted from such compensation, in any case." (Ill. Rev. Stat. 1987, ch. 110, par. 7—118.) Furthermore, allowing such a setoff could pose an equal protection problem. This is because it is conceivable in some instances that special benefits would be sufficient to offset damage to the remainder and just compensation for the land taken, resulting in no compensation to the landowner. Under these circumstances, the landowner would be forced to surrender property without compensation in order to enjoy benefits from the improvement while his or her neighbors might enjoy the same benefits without giving up their land.

Defendants also argue that the testimony of Southcomb concerning special benefits to the remainder from the tollway should have been stricken as speculative because he arrived at his opinion without knowing the number of cars projected to use the 75th Street or 63d Street interchanges, the date the tollway would open, or when the subject property would be developed for office use. Defendants' allegations are somewhat misleading with respect to this argument. Defendants' attorney asked Southcomb during cross-examination if he was familiar with the number of cars projected to use the 75th Street interchange, and he responded in the affirmative. Southcomb then admitted that, at his deposition two weeks earlier, he was not aware of this number or the projected number of cars which would use the 63d Street interchange. Southcomb also stated that he did not definitely know at the time of his deposition when the tollway would open and did not know how many cars were projected to use the property. Southcomb also had no idea when the property would be developed.

The case at bar is distinguishable from the case relied upon by defendants, *Department of Public Works & Buildings v. Divit* (1962), 25 Ill. 2d 93. In *Divit*, land was taken to build an interchange between an existing four-lane road and a highway under construction. A

gasoline station and a motel were located on the remainder. Two witnesses for plaintiff testified that benefits resulting from traffic on the new highway would offset any damage to the remainder, although neither witness knew how much traffic there would be on the highway or when it would open. Our supreme court held that the testimony of these witnesses concerning benefits to the remainder should have been stricken as speculative. *Divit*, 25 Ill. 2d at 101-02.

■ In the instant case, unlike *Divit*, there was no evidence that Southcomb was unaware of likely future traffic on the tollway at the time he testified. Southcomb testified that he was familiar with projected use of the 75th Street interchange. Moreover, in *Divit*, the alleged benefits were solely from traffic on the new highway. In the present case, Southcomb emphasized the increased accessibility to the property which the tollway would provide. Furthermore, in *Divit*, the witnesses had no idea when the new highway would open, while Southcomb stated only that at the time of his deposition he did not definitely know when the tollway would open. We do not deem Southcomb's testimony that he did not know when the property would be developed for office use to be significant, since he could not have been expected to know if and when the owner would choose to develop the property. His opinion concerning the increase in the value of the remainder was based upon the change in highest and best use, not upon when, if ever, the owner would choose to implement that usage. While the deficiencies mentioned by defendants may have affected the weight of Southcomb's testimony, they did not render that testimony impermissibly speculative as was the testimony in *Divit*.

■■ Defendants also contend that Southcomb was not qualified to testify as an expert. The trial judge has broad discretion in determining whether a witness is qualified to testify as an expert. (*Valiulis v. Scheffels* (1989), 191 Ill. App. 3d 775, 785.) An expert's knowledge may be based upon practical experience as well as academic or scientific training. (*Valiulis*, 191 Ill. App. 3d at 785.) Southcomb had appraised real estate for over 16 years. In the *Divit* case, our supreme court held that it was proper to admit the testimony of an experienced real estate appraiser concerning the value of land taken even though he had no prior knowledge of land values in the community. (*Divit*, 25 Ill. 2d at 99-100.) By contrast, Southcomb testified that he had appraised over 100 properties in Du Page County during the past two years. In an effort to discredit Southcomb in their brief, defendants make two misrepresentations of the record. The first is that Southcomb never appraised land in Du Page County for any person or entity other than the government. Southcomb testified that he had

never appraised any parcel of more than 10 acres for any individual or entity other than the government. The second is that Southcomb had no experience with office use. Southcomb testified that he had never appraised office land for a private developer and had never been hired by a developer to analyze or search out an office site. He never testified that he had no experience appraising office land or office sites.

■■ While the record does reveal that much of Southcomb's appraisal work in Du Page County was for the government, this does not discredit his testimony in our view. In light of Southcomb's lengthy experience as an appraiser, the trial court did not abuse its discretion by permitting him to testify as an expert witness.

According to defendants, the trial court erred by refusing to give an instruction which they proffered defining the term "special benefits." This instruction reads as follows:

"When I use the term special benefits which may be set off against damages to the remainder, I mean those benefits which flow from the proposed public improvement on defendant's property and which are not simply the advantages of progress accruing to the community at large, but which accrue to the land of defendant alone or to only the immediate neighborhood of defendant's property."

Plaintiff objected to this instruction on the basis that the Illinois Pattern Jury Instructions, Civil (2d ed. 1971) (IPI Civil 2d) recommend that no instruction be given limiting the jury to a consideration of special detriments or benefits (see IPI Civil 2d No. 300.50). The trial court sustained this objection and refused to give the above non-IPI instruction.

■■ Defendants argue that by failing to give the above instruction, the trial court left the jury free to consider general benefits to the remainder and to set off benefits to the remainder against just compensation for the property taken. The standard for assessing the adequacy of jury instructions is whether they fully, fairly, and comprehensively inform the jury about applicable legal principles. (*Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 554.) The trial court's refusal to give an instruction will not form the basis of reversal unless it results in undue prejudice to a party. *Ferry v. Checker Taxi Co.* (1987), 165 Ill. App. 3d 744, 749.

■■ The instructions in this case accurately informed the jury about the applicable principles of law regarding the assessment of just compensation and damage to the remainder. The court instructed the jury that it was to decide the amount of just compensation to be paid

defendants for the property taken, whether the remainder was damaged by the taking and, if so, the amount of money which would reasonably and fairly compensate defendants for the damage. With regard to just compensation, the trial judge instructed the jury as follows:

> "When I use the words 'just compensation' for the defendants' property which has been taken, I mean the fair cash market value of the property at its highest and best use on August 18, 1987." (See IPI Civil 2d No. 300.80.)

The court went on to define fair-cash-market value as "that price which a willing buyer would pay in cash and a willing seller would accept when the buyer is not compelled to buy and the seller is not compelled to sell." (See IPI Civil 2d No. 300.81.) These instructions correctly informed the jury how just compensation should be assessed, focusing solely on the fair-market value of the property taken and making no mention of setting off damages to the remainder.

With regard to the assessment of damage to the remainder, the trial court instructed the jury as follows:

> "If you find there is damage to the remainder caused by the taking, the measure of that damage is the difference between the fair cash market value of the remainder immediately before the taking and the fair cash market value of the remainder immediately after the taking." (See IPI Civil 2d No. 300.47.)

> "In determining fair cash market value of the remainder after the taking, you may consider any benefits or detriments from the proposed public use proved by the evidence, which increase or decrease the fair cash market value of the remainder." See IPI Civil 2d No. 300.49.

These instructions accurately state the law with regard to damage to the remainder and consideration of special benefits. As we have seen, any benefits which enhance the fair-market value of the remainder and are not speculative are special benefits. (*Sanitary District v. Boening* (1915), 267 Ill. 118, 124; *Brand v. Union Elevated R.R. Co.* (1913), 258 Ill. 133, 138.) Since the jury was instructed only that it could consider proved benefits or detriments enhancing or diminishing the fair-market value of the remainder, it was not left free to consider general benefits.

Additionally, as we have previously indicated, damage to the remainder is measured by establishing the difference between the fair-market value of the land prior to the improvement and as affected by the improvement; and this approach will necessarily take into account any special benefits. (*Department of Public Works & Buildings v.*

*Barton* (1939), 371 Ill. 11, 17.) The trial court instructed the jury to adopt this approach. The trial court's refusal to give the proffered instruction was proper because the instructions given adequately advised the jury about the applicable legal principles concerning assessment of damage to the remainder and just compensation.

Defendants next contend that they were prejudiced by certain allegedly improper remarks of plaintiff's counsel during closing argument. Defendants complain of the following statements by plaintiff's attorney:

> "But that million and a half dollar increase in value that Mr. Southcomb testified to cannot—cannot be set off against how much Mr. Gallagher should be paid for the part taken because he has an absolute right under our constitution and under our law to be paid the full fair cash market value for that part taken and the fact that his remainder is increased in value cannot be used to offset the part taken."

Counsel for defendants objected on the basis that the above comment was intended to plant the idea in the jurors' minds that such a setoff should be made. The trial court sustained the objection.

At the outset, we note that the above remarks are a correct statement of the law. The one case cited by defendants in support of this argument, *City of Quincy v. V.E. Best Plumbing & Heating Supply Co.* (1959), 17 Ill. 2d 570, is clearly distinguishable. In that case, which was also an eminent domain action, counsel for the landowner stated during argument that the jury could not give the owner compensation for moving expenses, inconvenience or its goodwill in that location, but then stated that the jury could give the owner just compensation that would render it neither richer nor poorer. Our supreme court held that these remarks improperly invited the jury to consider the improper elements mentioned by counsel when the jury awarded just compensation. *City of Quincy*, 17 Ill. 2d at 577.

In *City of Quincy*, counsel made a correct statement of law during argument but then made further remarks which invited the jury to disregard that principle of law. In the present case, plaintiff's counsel only made the correct statement of law; he did not make any further remarks suggesting that the jury disregard the law. We are unable to perceive any possible prejudice to defendants from a correct statement of law by plaintiff's counsel favorable to defendants' position. We also note that in *City of Quincy*, the improper argument was one of four errors which resulted in reversal. (17 Ill. 2d at 577.) We reject the contention that a new trial is necessary because of the above allegedly improper remarks by plaintiff's attorney.

The next error alleged by defendants is the trial court's refusal to admit into evidence an exhibit from an environmental-impact statement regarding the tollway. Defendants contend the exhibit should have been admitted into evidence because it contained an admission by plaintiff that the highest and best use for the remainder was multiple-family residences. This purported admission was on a map attached to the statement showing the areas of Woodridge near the new tollway. Projected future land uses for vacant parcels were shown on the map. The subject parcel was designated "MF," which stood for multifamily residential.

Before ruling on the admissibility of the exhibit, the trial judge heard testimony from Mark Lucas, an engineer for Envirodyne, Inc., the company that prepared the map on the exhibit. Lucas testified that plaintiff paid Envirodyne for its work on the exhibit. He further testified that the exhibit was not a projection of future land uses by Envirodyne and that the company relied on local and county comprehensive plans in designating future land uses in the document. The exhibit was subsequently appended to the environmental-impact statement prepared by the Army Corps of Engineers with regard to the tollway, according to Lucas.

■■ ■ A statement made by or attributable to a party which constitutes an admission against his or her interest and tends to prove or disprove any material fact is admissible into evidence. (*Schutt v. Terminal R.R. Association* (1967), 79 Ill. App. 2d 69, 76-77.) Defendants argue that the exhibit contains an admission by plaintiff that the highest and best use of the remainder is for multiple-family residences. According to Mark Lucas, however, the listing of multiple-family residential use as the future use on the exhibit did not constitute a projection by Envirodyne of the future use of the remainder. Instead, the company merely relied on local and county comprehensive plans in designating future uses on the exhibit. The statement that multiple-family residential use is the likely future use for the remainder is therefore attributable to the locality which prepared the plan relied upon by Envirodyne, not to plaintiff or Envirodyne, its alleged agent. The trial court properly refused to admit the exhibit in question.

Defendants next argue that the trial court improperly excluded evidence that when plaintiff settled a condemnation action with owners of land also abutting the new tollway north of the subject property, plaintiff paid damage to the remainder as part of the settlement. The land involved in this settled condemnation action contained the Bristol Court apartment complex. Frank Lorenz, one of plaintiff's ex-

pert witnesses, testified that the complex's owners used the tollway as a marketing tool and that rentals in the complex for apartments closer to the tollway were the same as those for units farther away. Defendants argue that in order to rebut this testimony, they should have been permitted to show that plaintiff paid damage to the remainder in settling the suit involving the Bristol Court property.

Offers of settlement and compromise are ordinarily not admissible at trial. (*Bowman v. Illinois Central R.R. Co.* (1957), 11 Ill. 2d 186, 213; *Sawicki v. Kim* (1983), 112 Ill. App. 3d 641, 644; *Hill v. Hiles* (1941), 309 Ill. App. 321, 331.) The reason for this rule is that public policy favors settlement of claims outside of court. (*Sawicki*, 112 Ill. App. 3d at 644-45; *Hill*, 309 Ill. App. 331.) In *Hill*, the court went on to state as follows:

"We think that this same public policy applies when an actual settlement is made with a third party. A person making such a settlement should not be required to explain his conduct before a jury where apart from the mere act of payment there is no other act or statement on his part which could be construed as an admission of liability. If such evidence is not excluded and is allowed to go to the jury it may be extremely prejudicial even where an explanation is made showing that the only purpose of the payment was to avoid litigation without reference to the question of liability." (309 Ill. App. at 331-32.)

The *Hill* court held evidence of plaintiff's settlement of a claim with a third party arising out of the same automobile accident that was the subject of the litigation in that case was not admissible. 309 Ill. App. at 332.

The situation in the present case is somewhat different from that in *Hill* because the settlement defendants sought to introduce resulted from a different occurrence, a separate taking of land. Nevertheless, the same public policy concern that was present in *Hill* and the other cases we have cited is present here. Allowing evidence of a settlement in a condemnation case to be admitted in another condemnation case relating to different land but the same project would discourage settlements by the appropriate governmental body in any eminent domain action relating to that project. This is clearly contrary to the Illinois public policy of encouraging settlements. Furthermore, *Hill* stands for the proposition that settlements are not admissions of liability and should not be admitted into evidence as such. We agree with this sentiment. The trial court properly excluded evidence relating to plaintiff's settlement with the owners of the Bristol Court complex.

Defendants contend that plaintiff violated the order *in limine* imposed by the trial court in the above regard three times in questioning witnesses about the Bristol Court property. There is no merit to this contention. The parties were only prohibited from introducing evidence that plaintiff settled the eminent domain action involving Bristol Court and paid damage to the remainder. Plaintiff did not violate this order.

The trial court granted defendants' motion *in limine* to bar plaintiff from presenting evidence as to the date the legislature passed laws authorizing the tollway, dates on which bonds were offered for sale on the tollway, or evidence of defendants' prior knowledge that the tollway would be constructed. Defendants contend the trial court erroneously allowed plaintiff to present certain evidence in violation of the order.

Defendants' attorney asked Robert Olson whether, in arriving at his opinion as to the highest and best use of the land, he was aware of the Du Page County comprehensive plan, and Olson said he was. Defendants' attorney then asked what designation was made on the Du Page County land-use map guide for future growth, which was part of the plan, with regard to the remainder. Olson stated the subject property was designated residential.

On cross-examination, Olson acknowledged that the Du Page County comprehensive plan was adopted in 1985 and that work on the plan was done from 1983-85. Plaintiff's attorney then asked if the tollway project had been approved at this time, and the trial court overruled a defense objection to this question. Olson then stated that the tollway project had not been approved at the time the plan was being prepared.

Although the trial court later expressed reservations about its ruling on the above matter, we conclude the evidence was properly admitted. Defendants' motion *in limine* was based upon *Department of Transportation v. Newmark* (1975), 34 Ill. App. 3d 811, in which the court held it improper in an eminent domain action to introduce evidence the landowner had prior knowledge concerning the taking of his or her property. (*Newmark*, 34 Ill. App. 3d at 814.) Here, Olson's testimony that the tollway had not been approved at the time the county comprehensive plan was adopted did not in any manner indicate defendants had prior knowledge of the taking. The trial court did not err by permitting the testimony in question.

Defendants next complain that plaintiff's attorney asked a misleading question and made a misleading comment during closing argument about the Brookdale sale, a sale of land in Naperville. Frank

Lorenz admitted at trial that he had relied upon the sale in formulating his opinion as to the value of the subject property, but stated he had not relied upon it in his valuation testimony at trial. From the further testimony of Lorenz and defense expert, Neil King, it is apparent the seller in the Brookdale transaction was required to complete certain public improvements as a condition of the sale, including improvements on two streets adjacent to the property and construction of sewer basins and water mains near the land. In the allegedly improper comments, plaintiff's counsel emphasized the seller's obligation to make improvements, including putting in the water mains, the sewer, and providing for construction of the internal streets. Although defendants complain of these remarks as unsupported by the evidence, they appear to be amply supported by the testimony of Lorenz and King.

In *Khatib v. McDonald* (1980), 87 Ill. App. 3d 1087, the case cited by defendants in support of this argument, counsel for defendant in a personal injury action arising from an automobile accident asked an improper question and made an improper comment during argument, implying defendant had suffered a back injury in a prior car accident, when there was no evidence this was true. (*Khatib*, 87 Ill. App. 3d at 1096-97.) The court ordered a new trial on the issue of damages. (87 Ill. App. 3d at 1099.) In *Khatib*, since plaintiff sought damages for a back injury, the prejudicial impact of the improper comments was substantial. Even if there were improper comments in this case, the potential prejudice was minimal, since the sale in question was not even relied upon by any of the experts who testified in valuing the property, and the evidence concerning the sale had little relevance. We reject the contention that a new trial is required because of these comments.

Defendants also argue that the trial court erroneously permitted plaintiff to present a unilateral stipulation to the jury that it would plant trees and perform some landscaping near defendants' property, in accordance with a certain plan. The condemning authority in an eminent domain action is entitled to file a stipulation in open court binding itself to provide improvements to mitigate damage to the remainder; the landowner then has a vested right to enforce the stipulation. (*Department of Public Works & Buildings v. Kelly* (1976), 40 Ill. App. 3d 896, 908.) Defendants argue that this stipulation should not have been presented for several reasons. First, defendants maintain there is no evidence that plaintiff passed a resolution binding itself to abide by the stipulation. Defendants have cited no cases, however, nor has our research uncovered any, which indicate that

such a stipulation on a client's behalf by their attorney is not binding upon the client. We therefore reject defendants' initial contention regarding the stipulation.

Defendants also maintain the stipulation was improper because the trees mentioned in the plan could not have been legally planted in Woodridge. On cross-examination, defendants' attorney asked Frank Lorenz to read a Woodridge ordinance regarding acceptable trees for planting. Lorenz said none of the trees in the plan were mentioned in the Woodridge ordinance, but later testified he was sure trees acceptable to the village would be an adequate substitute. The landscaping plan which plaintiff agreed to follow and the applicable Woodridge ordinance are not part of the record on appeal. If, in fact, plaintiff cannot legally perform its obligations under the stipulation under *Kelly*, defendants still have acquired vested rights in the performance of those obligations and could recover damages for breach of the stipulation. We therefore reject this contention as well.

The fact that the landscaping plan was not a final plan according to one witness is not significant in our view. Under *Kelly*, plaintiff was obligated to plant the trees and provide the landscaping set forth in the plan, whether it was final or not.

Defendants also argue that permitting the stipulation was erroneous because plaintiff waited until the end of trial to seek permission to present it and none of the expert witnesses considered the stipulation in their testimony concerning alleged damage to the remainder. Defendants did not present these grounds for objection when they objected to the introduction of the unilateral stipulation. An objecting party must specify the grounds for the objection, and no grounds other than those stated will be considered on appeal. (*Johns-Manville Products Corp. v. Industrial Comm'n* (1979), 78 Ill. 2d 171, 179; *Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 411.) Defendants have therefore waived these grounds for objection on appeal.

While questioning defense expert William McCann, counsel for defendants inquired about the cost of building sound-barrier fences that plaintiff constructed in other areas along the tollway. The trial court sustained plaintiff's objection to this question. Defendants now argue this ruling was erroneous because McCann relied in part upon the cost of constructing such fences in determining damage to the remainder. Defendants, however, failed to make an offer of proof as to how McCann would have answered this question. An offer of proof is necessary to preserve the issue for review if the trial court excludes testimony of a witness on a particular matter. (*Moore v. Farmers In-*

*surance Exchange* (1982), 111 Ill. App. 3d 401, 412.) Without such an offer, we cannot possibly evaluate the usefulness of McCann's potential testimony to the jury or the prejudice to defendants from excluding the testimony. (See *Dyback v. Weber* (1985), 134 Ill. App. 3d 426, 446.) Defendants have waived this issue for review.

Finally, we note that defendants' brief did not meet the requirements of Supreme Court Rule 341(e)(6), which requires the appellant's brief to contain a statement of facts which "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment." (113 Ill. 2d R. 341(e)(6).) One example of the argumentative nature of defendants' statement of facts is a statement that the trial court "allowed plaintiff to present a case based on general benefits." This is a legal conclusion, not a factual statement, and, as we have indicated, we believe it is an erroneous conclusion. While zealous advocacy of a client is generally commendable, counsel must still advocate his or her client's position within the framework of the applicable rules.

For the above reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

REINHARD and McLAREN, JJ., concur.