THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Plaintiff-Appellee, v. ITASCA BANK AND TRUST COMPANY *et al.*, Defendants-Appellants.

Second District   No. 2—90—0967

Opinion filed August 1, 1991.

McLAREN, J., dissenting.

Robert A. McNees, of Carol Stream, for appellants.

Roland W. Burris, Attorney General, of Springfield (Robert E. Douglas, Malcolm E. Erickson, and Algirdas P. Ambutas, Special Assistant Attorneys General, of Oak Brook, of counsel), for appellee.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiff, the Illinois State Toll Highway Authority, filed an eminent domain action against defendants, Itasca Bank and Trust Company and Richard O. Schwarz, to acquire certain portions of defendants' property, known as the Schwarz Nursery. The bank held title to the land as trustee, and Schwarz was owner of the beneficial interest in the land trust. Defendants filed a cross-petition for damages to the remainder. The jury awarded $42,272 in just compensation for the land taken, $25,000 in damage to the remainder, and $5,250 for the temporary construction easement. Defendants contend on appeal that a new trial is necessary because the trial court erred in permitting evidence of special benefits from the tollway to the remainder and in failing to strike certain valuation testimony of plaintiff's witness. Defendants also raise an error concerning costs to cure. No issues are raised with respect to the taking of the property.

The property in question is located on the corner of Army Trail Road and Rohlwing Road in Bloomingdale Township, unincorporated Du Page County, Illinois. It is rectangular in shape, with approximate dimensions of 300 feet by 600 feet, and contains approximately 205,000 square feet or about 4.7 acres. It is zoned as a B-1 business with a special-use permit for the operation of the existing retail nursery. A garden center which carries a full range of products for outdoor landscaping is located on the property.

The first of the parcels acquired by plaintiff extends along Army Trail Road. It is approximately 17 feet in width and includes an irregularly shaped area at the corner arc.

Another parcel is a control line prohibiting access from the remainder of the Schwarz property to Army Trail Road along the west 166 feet of frontage. The access control was required to prevent vehicular traffic and safety problems resulting from the North-South Tollway interchange and adjacent ramp operations.

The last parcel is a temporary construction easement consisting of about 4,100 square feet. The two-year temporary easement enabled plaintiff to construct a replacement driveway along Army Trail Road.

Plaintiff's first witness was Mark Lucas, a licensed Illinois professional civil engineer who specialized in highway and municipal engineering. He has been employed for the last eight years with Envirodyne Engineering, Inc., where he was chief of planning in the toll road department and has been involved with the North-South Tollway project since its inception. He testified that the North-South Tollway was a limited access highway facility constructed through the middle of Du Page County.

The Schwarz property was about 150 feet from the northbound entrance ramp of the Army Trail Road interchange. Lucas described this interchange as the north end of the tollway which replaced the previous half-diamond interchange of Route 53. The northbound ramp led to Route 53. The property was about 500 feet from the tollway, which ran south from the Army Trail Road interchange. Lucas testified that the property was taken to widen Army Trail Road, and the access control was for the northbound ramp to Route 53. Lucas called these off-alignment improvements, which he defined as improvements to adjacent intersections. He said that these off-alignment improvements were necessary for and part of the tollway project.

Lucas identified an agreement between plaintiff and the Department of Transportation (DOT) whereby DOT would participate in

some right-of-way costs and have title and jurisdiction over certain properties transferred to it after the completion of the project. The Schwarz property taken by plaintiff would be turned over to DOT.

Thomas Collins, a real estate appraiser, testified that in his opinion the highest and best use for the property before the taking was commercial and a nursery was consistent with this opinion. His opinion of the highest and best use of the property after the take reflected a more intense commercial usage than that which currently existed. He therefore assigned no value to the improvements as they related to the whole property because they would have to be razed for the highest and best use of the property. The improvements did not contribute value to the whole so he valued the property as vacant.

Collins valued the whole property before the taking at $1,026,000. He valued the fee taking at $36,500, the temporary easement at $4,100, and the access control at $49,500. Collins valued the remainder as part of the whole property at $990,000 and the remainder after the take at $1,188,000. In Collins' opinion, the property enjoyed special benefits from the tollway which accounted for the increased value of the remainder after the take. These special benefits offset the damages to the remainder. Total compensation was $41,600.

Another real estate appraiser, David White, testified that in his opinion the highest and best use for the property before and after the take was for a commercial use of a more intense nature than a nursery. White valued the whole property at $1,027,000. His opinion of the value of the part taken in fee was $34,495, and the value of the temporary easement for two years was $4,000. In White's opinion, the access control taking caused no damage to the remainder and, therefore, had a value of $0. White indicated that before the take, the remainder, as a part of the whole, had a value of $992,505 and that the value of the remainder was unchanged after the take. Total compensation in his opinion was $38,495. Like Collins, White attributed no value to the improvements on the whole property.

Defendants called Joseph Zgonina, an engineer who evaluated the property from a traffic-engineering standpoint before, during and after construction. He indicated that 21 parking spaces had been eliminated as a result of the taking. Zgonina also said that this would be the maximum number of spaces lost if everyone parked correctly and that possibly fewer spaces could be utilized because there was no striping to delineate parking. He prepared an after-take plan for 43 parking spaces. Zgonina indicated that the

9% grade proposed for the Schwarz driveway was unacceptable in his opinion. The driveway of a commercial-use property, according to Zgonina, should have no more than a 6% grade. Prior to the take, the Schwarz driveway was at an 8% grade.

Richard Schwarz testified that he owned the subject property and that he had worked at the Schwarz nursery for 19 years. Schwarz explained the nursery operation and the changes he made to the property subsequent to the take.

Donald Neuses, a real estate appraiser, testified that in his opinion the highest and best use of the property both before and after the taking was its existing use. He valued the whole property at $2,050,000. The value of the part taken in fee was $50,000, and the value of the temporary easement was $7,340. He found damage to the remainder in the amount of $225,000. Neuses considered the following as elements of damage: loss of parking, loss of area to replace the parking, access control and driveway changes.

James Dunn, a real estate appraiser, testified that in his opinion the highest and best use of the property before and after the take was commercial. He valued the whole property at $1,600,000. He valued the part taken at $46,315 and the value of the temporary easement at $8,515. He found damage to the remainder in the amount of $205,000. He considered lost parking, the loss of display area to replace that parking, lost driveways and access and change in driveway grades.

In the first issue, defendants contend that the trial court erred in admitting testimony on the value of special benefits from the tollway. Defendants' motion *in limine* to bar testimony on special benefits was denied. They acknowledge that the off-alignment improvements were necessary for the tollway from an engineering perspective. However, since no part of the tollway, the public improvement herein, is on the property, special benefits from the tollway should not be considered. Ill. Rev. Stat. 1987, ch. 110, par. 7—120.

Plaintiff argues that the off-alignment improvements were part of the tollway project and were necessary for construction of the tollway. Therefore, it was proper to admit evidence of special benefits from the tollway based upon *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.* (1990), 196 Ill. App. 3d 5.

■ The measure of damages for the remainder in an eminent domain proceeding is the difference in the fair-market value of the property as a whole before and after the improvement. (*Department*

*of Public Works & Buildings v. Exchange National Bank* (1975), 31 Ill. App. 3d 88.) When property is not taken, special benefits may always be offset against damages to the remainder. (*Cuneo v. City of Chicago* (1948), 400 Ill. 545.) Special benefits are the benefits which flow from the proposed public improvement and which are not simply the advantages of progress accruing to the community at large, but which accrue to the particular land alone or to only the immediate neighborhood. (*Exchange National Bank*, 31 Ill. App. 3d at 102-03.) Benefits do not become general benefits merely because they are common to other properties in the area. *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.* (1990), 196 Ill. App. 3d 5, 13.

Section 7—120 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 7—120) states in part as follows:

> "In assessing damages or compensation for any taking or property acquisition under this Article, due consideration shall be given to any special benefit that will result to the property owner from any public improvement to be erected on such property." (Ill. Rev. Stat. 1989, ch. 110, par. 7—120.)

The evidence established and it is uncontradicted that no part of the tollway is on the subject property. None of the property taken was used for the actual tollway, but was needed for off-alignment improvements deemed necessary as part of the tollway project. The issue then is whether the trial court erred as a matter of law in admitting evidence of special benefits from the tollway.

In *Heritage Standard Bank* (196 Ill. App. 3d 5), defendants argued that section 7—120 of the Code barred consideration of any special benefits resulting to the remainder of the property from the 63d and 75th Street interchanges of the North-South Tollway because the interchanges were not located on the property taken from defendants. We disagreed. We found that the public improvement erected on the property was the tollway, and the entrance and exit ramps at 63d and 75th Streets were part of the tollway project. Therefore, the ramps were part of the public improvement erected on the property taken from defendants. Section 7—120 did not prohibit the Illinois State Toll Highway Authority from presenting evidence that defendants specially benefitted from the interchanges.

■ Section 7—120 of the Code requires that special benefits be considered from "any public improvement to be erected on such property." (Ill. Rev. Stat. 1989, ch. 110, par. 7—120.) Although plaintiff contends that, under *Heritage Standard Bank*, the location of the property is unimportant as long as it is used or needed for

part of the public improvement project, we do not read *Heritage Standard Bank* so broadly. This court reasoned in *Heritage Standard Bank* that the public improvement erected on the property was the tollway, and the ramps, as part of the tollway project while not on defendants' property, were part of the public improvement erected on the property taken from the defendants. Unlike *Heritage Standard Bank*, here the public improvement, the tollway, is not being erected on any part of the defendants' property. The ramp is part of the tollway project, and the property was taken in connection with the tollway project; however, the actual public improvement is not located on any part of defendants' property. This fact distinguishes this case from *Heritage Standard Bank*. Based upon this reasoning and section 7—120 of the Code, the trial court erred as a matter of law in admitting evidence of special benefits from the tollway.

Defendants further argue that the property was taken for a DOT project because the northbound ramp leads to a DOT road, Route 53, and Army Trail Road is a DOT street. They point to the intergovernmental agreement between plaintiff and DOT whereby DOT will take control of the off-alignment improvements. However, plaintiff relies on *Capitol Building Co. v. City of Chicago* (1948), 399 Ill. 113, in its argument that special benefits arising from the tollway are not affected by the agency which ultimately utilizes the off-alignment improvements. Defendants also claim that special benefits were not proven at trial. And, lastly, defendants argue that their modified jury instruction should have been given to the jury. We do not address these three points in view of our finding that special benefits from the tollway should not have been admitted at trial.

Defendants contend in their second issue that the trial court erred in failing to strike Collins' valuation testimony because he used improper elements in forming his opinion. (*Department of Public Works & Buildings v. Butler* (1972), 5 Ill. App. 3d 134; see *Department of Transportation v. Rasmussen* (1982), 108 Ill. App. 3d 615.) Collins valued the whole property as vacant land at a value of $5 per square foot. He then valued the land taken at $5 per square foot but added $3,475 for certain improvements on the part taken. Defendants argue that this was incorrect because the part taken must be valued as part of the whole parcel. (*Tri State Park District v. First National Bank* (1975), 33 Ill. App. 3d 348.) Defendants claim that Collins undervalued the whole and the remainder by

this approach and should have valued the whole with improvements contributing to the value.

■■ The measure of land taken in a condemnation proceeding is the fair-cash-market value of the property for its highest and best use. (*Department of Public Works & Buildings v. Oberlaender* (1969), 42 Ill. 2d 410.) Fair-market value can be defined as the price for which the property would sell under ordinary circumstances surrounding the sales of property, assuming both an owner willing to sell and purchaser willing, but under no compulsion, to buy. (*Oberlaender*, 42 Ill. 2d at 415.) Whether just compensation for property taken or damage to the remainder is involved, determinations of market value are based upon the worth of an estate, or portions thereof, as entire entities and not upon the sum of their constituent parts, *i.e.*, land and improvements. (*Department of Transportation v. Schlechte* (1981), 94 Ill. App. 3d 187.) Where a parcel of land, used as a part of the entire property, is taken for public use, and the land taken is of greater value considered as part of the entire property, than if taken as a distinct and separate piece entirely disconnected from the remainder, the just compensation for the part taken is its fair-cash-market value when considered in its relation to and as part of the entire property and not simply its value as a separate and distinct piece. (*Butler*, 5 Ill. App. 3d at 136.) Thus, the value of the property taken must be determined as a part of the whole tract before the taking and not as a property separate and disconnected from the rest. *Tri State Park District*, 33 Ill. App. 3d 348.

Plaintiff contends that Collins did consider the property as a whole, including improvements, but he valued the improvements as having no value. Relying on the rule of law stated in *Butler* (5 Ill. App. 3d at 136), recited earlier, plaintiff claims that the converse must be true: where the value of the part taken is greater when valued as separate from the whole, it is appropriate to accord it that greater value. We do not address this point because there was no evidence that the part taken had a greater value as a separate and distinct part rather than as part of the whole. The increase in value for the part taken merely resulted from Collins' method of valuating it.

Plaintiff also notes that even if Collins' testimony should have been stricken, reversal is not required because no prejudice resulted from it. (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408.) The inclusion of the improvements in the value of the part taken benefitted defendants because instead of the value being $33,025, it was

$36,500. However, Collins' method did slightly affect his calculations of damage to the remainder.

■■ The record herein shows that Collins valued the property as a whole, including the improvements, which was the proper method of appraisal. (*Department of Public Works & Buildings v. Lotta* (1963), 27 Ill. 2d 455.) The fact that Collins assigned no value to the improvements was not error as he was valuing the property at its highest and best use and, in his opinion, the improvements added no value to the land. This factor went to the weight of Collins' testimony. Although defendants claim he improperly valued the whole as vacant because the take was essentially vacant, Collins' testimony on this point was contradictory. He also testified that he valued the whole land as vacant because the improvements were underimprovements and added no value.

Collins indicated that he valued the take as part of the whole. His valuation amount does not reflect this fact, however, because he added the value of improvements to the part taken. In keeping with his appraisal of value for the whole, the part taken should not have been accorded added value for the improvements thereon. Since the cause is being remanded under the first issue, the proper method of valuation shall be applied on remand.

■■ Lastly, defendants argue that if this cause is remanded for a new trial, testimony regarding the dollar amounts for costs to cure should be allowed. Plaintiff made a motion *in limine* to bar Schwarz from testifying to costs incurred from changing the grade, paving and drainage on the remainder. The discussion was in chambers, and the record provides only a brief exchange on the matter. Defendants were apparently claiming that dollar amounts were admissible as a factor considered by appraisers in arriving at damages to the remainder. They assert that while *Department of Public Works & Buildings v. Bloomer* (1963), 28 Ill. 2d 267, and several cases clearly hold that specific costs to adapt the remainder to use are not admissible, the rationale in *Wilson v. Clark* (1981), 84 Ill. 2d 186, *Department of Transportation v. Beeson* (1985), 137 Ill. App. 3d 908, and *City of Chicago v. Anthony* (1990), 136 Ill. 2d 169, should be extended to costs to cure.

While we question the propriety of altering Illinois law, we need not decide whether specific costs to cure should be admitted. Defendants failed to make an adequate offer of proof in the trial court and thus have not preserved the issue for review. (*Piano v. Davison* (1987), 157 Ill. App. 3d 649, 668.) We also note that *Wil-*

*son v. Clark* (1981), 84 Ill. 2d 186, concerns expert testimony whereas in this case Schwarz was not qualified as an expert.

Based upon the foregoing, the judgment of the circuit court is reversed, and the cause is remanded for a new trial to determine just compensation.

Reversed and remanded.

DUNN, J., concurs.

JUSTICE McLAREN, dissenting:
There is one aspect of the majority opinion with which I disagree and, therefore, I must dissent. The majority interprets the phrase "any public improvement to be erected on such property" too narrowly. (Ill. Rev. Stat. 1989, ch. 110, par. 7—120.) I agree that no part of the tollway is on the subject property; however, I believe that the term "public improvement to be erected on such property" relates to the entire project and not just the tollway right-of-way. There was testimony that the realignments which related to this property were necessary and part of the public improvement to be erected on such property. Therefore, the testimony had a proper foundation and should have been admitted so that the trier of fact could determine what weight should be given to this evidence. The majority directs its attention to the *Heritage Standard Bank* case, rather than directing its attention to section 7—120 of the Code. I believe it is a question of fact and not a question of law as to whether evidence concerning special benefits accrued to this particular property. (See *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.* (1990), 196 Ill. App. 3d 5, 14.) I believe the trial court did not err in admitting evidence regarding special benefits because there was competent testimony from witnesses establishing the property taken from the defendants was necessary for and part of the public improvement to be erected.