ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Plaintiff-Appellant, v. AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee, *et al.*, Defendants-Appellees.—ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Plaintiff-Appellant, v. BANK OF RAVENSWOOD, as Trustee, *et al.*, Defendants-Appellees.

Second District No. 2—92—0020

Opinion filed October 23, 1992.—Rehearing denied November 25, 1992.

Roland W. Burris, Attorney General, of Springfield (Paul J. Olszewski and Frank M. Howard, Special Assistant Attorneys General, of Oak Brook, and Thomas F. Geselbracht, Special Assistant Attorney General, of Chicago, of counsel), for appellant.

Peregrine, Stime, Newman, Ritzman & Bruckner, Ltd., of Wheaton (Roger A. Ritzman, of counsel), for appellees.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, the Illinois State Toll Highway Authority (the Authority), appeals from a consolidated eminent domain proceeding wherein a jury awarded the defendant trustees, American National Bank and Trust Company of Chicago and the Bank of Ravenswood, $603,571 for the taking of their property and $176,673 in damages. On appeal, the Authority argues that (1) the court erred in excluding evidence of the purchase price paid by the defendants; (2) the court erred in excluding evidence of special benefits which accrued to the remainder of the property; (3) the defendants waived any claim for interest at a rate greater than provided by statute; and (4) the verdict was against the manifest weight of the evidence.

The defendants are the trustees for the property at issue, a 3.35-acre tract located within a subdivided block (Block 38) in an unincorporated section of Du Page County. The property consists of 21 lots and was assembled by the defendants in four separate transactions. The property is situated west of and adjoining the main line of the North-South Toll Road where it intersects with Roosevelt Road. The property is vacant, and it is not serviced with sewer or water. The trusts, administered by the defendants, contain 21 of the 22 lots in Block 38; each lot is about a quarter acre in size.

On April 22, 1987, the Authority filed a complaint for condemnation of a three-lot portion of the defendants' property. The Authority exercised its right of eminent domain over this property for the specific purpose of constructing compensatory wetlands; those wetlands were required by the United States Army Corps of Engineers because the construction of the North-South Toll Road eliminated some preexisting wetlands. On September 23, 1987, the trial

court held a "quick-take" hearing and preliminarily determined that just compensation for the taking of the subject property was $51,300. The preliminary award was deposited with the Du Page County treasurer and was withdrawn by the defendants. On October 8, 1987, the court entered an order which vested title to the property in the Authority.

Needing additional land for the construction of compensatory wetlands, the Authority filed, on December 23, 1987, a complaint for condemnation of nine of the defendants' remaining lots. That complaint was considered together with a complaint addressing a single additional lot. Again, pursuant to a "quick-take" hearing, an award was deposited with the treasurer of $125,000, and the court entered an order vesting title to the property in the Authority.

On April 21, 1988, the trial court entered an order consolidating these takings of 13 of the defendants' 21 lots. A four-day jury trial concerning the takings commenced on April 8, 1991. The court first considered the parties' motions *in limine*. Among these were the defendants' motion to bar all evidence regarding the purchase price they paid for the subject property. Also, the defendants moved the court to bar all evidence concerning special benefits which might inure to the defendants as a result of the taking. The court granted these motions.

On April 11, 1991, at the conclusion of the trial, the jury returned a verdict that just compensation for the taking of the subject property was $603,571 and that damage to the remainder of the property was $176,673, a total of $780,244 exclusive of interest.

On May 21, 1991, the Authority filed a motion for summary judgment concerning the interest rate on the final compensation award. The court denied the Authority's motion and continued the matter for later determination.

On September 6, 1991, the court entered judgment on the jury verdict. It also established interest rates on the portion of just compensation exceeding the amounts awarded in the respective "quick-take" proceedings. It awarded 8.7% on $59,908.59, beginning September 23, 1987, on the first taking. It also awarded 9.0% on the sum of $367,362.41, beginning February 10, 1988, on the second taking. The court further awarded 6% interest on damages to the remainder, calculated from December 1, 1987.

On October 4, 1991, the Authority filed a post-trial motion for a new trial. It argued that it was denied a fair trial because the court barred evidence on both the defendants' purchase price of the subject property and the special benefits which inured to the defend-

ants as a result of the taking. The Authority also argued that the interest rates established by the court were inconsistent with the mandate of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 7—108(1)). On December 9, 1991, the trial court entered an order denying the Authority's post-trial motion. The Authority timely appealed that decision.

On appeal, the Authority first argues that the court erred in barring evidence of the defendants' purchase price of the subject property. The Authority notes that the defendants purchased the property two years before the 1987 taking and paid about $1 per square foot. The Authority asserts that the court abused its discretion in barring this evidence. In reaching its finding concerning the admissibility of the purchase price, the court relied, in part, on the opinion of two appraisers who agreed that the purchase price was not a reliable factor in this case.

▪▪ ▪ Generally, the price paid by the owner is a factor to be considered in setting the value of land taken as long as (1) the sale is recent; (2) the defendant purchased the property in a voluntary transaction; and (3) no changes in market conditions or marked fluctuations in the values of property have occurred since the sale. (*Illinois State Toll Highway Authority v. Grand Mandarin Restaurant, Inc.* (1989), 189 Ill. App. 3d 355, 362.) However, the trial court has discretion as to the admissibility of evidence relating to the purchase price of the property. (*Department of Transportation v. Prombo* (1978), 63 Ill. App. 3d 407, 413.) A substantial increase in recent property valuation alone may be sufficient to exclude evidence of the prior purchase price, particularly where the appraisal witnesses testify to a rapid increase in value. *Prombo*, 63 Ill. App. 3d at 413.

In arguing against admission of this evidence, the defendants do not challenge, under this analysis, that their purchase of the property in question was recent. The defendants do, however, allege that the value of the property after its assemblage into one large parcel far exceeds the value of the individual lots. They based their claim on the "assemblage," the greater utility and economic use of larger land parcels. They also allege that their purchase was not entirely voluntary and that there is a difference in the real estate market at the time of the prior sale and the real estate market upon the taking by the Authority.

▪ In this case, all four appraisers who testified agreed that the property's purchase price did not reflect its fair-market value as of the date of the taking. The Authority's own appraisers testified

that the purchase price of the small individual lots did not reflect the value of the assembled 3.35-acre parcel. Thomas Collins, an appraiser for the Authority, stated that it would be erroneous to rely on the sales price of the subject property, given the dramatic increase in values, where many small properties are assembled together. Fred Tadrowski, also an appraiser for the Authority, stated that he did not rely on the prices paid for the subject property because he "appraised [the property] as a whole," not as smaller parcels, because one "couldn't do much with them by themselves." He continued by stating, in part, that he did not use the purchase price at arriving at his value because "they were such a small part when I was appraising this larger parcel." The two appraisers for the defendants agreed on this point.

We find no abuse of discretion to exclude the evidence of the 1985 purchase price. Here, the defendants' various purchases brought together small parcels of land. That process had the unique consequence, according to the appraisers, of greatly affecting the market price. (See *Prombo*, 63 Ill. App. 3d at 412-13; *Grand Mandarin Restaurant*, 189 Ill. App. 3d at 362.) As we find a sufficient basis to affirm the court on this issue, we do not reach the defendants' other bases for the exclusion of the original purchase price.

■■ The Authority next argues that the trial court erred in excluding evidence of the special benefits that inured to the remainder of the defendants' property because of the construction of the North-South Toll Road. Under the Code of Civil Procedure, "[i]n assessing damages or compensation for any taking or property ***, due consideration shall be given to any special benefit that will result to the property owner from any public improvement to be erected on such property." (Ill. Rev. Stat. 1991, ch. 110, par. 7—120.) The Authority asserts that the court's refusal to allow evidence of special benefits directly conflicts with the Code of Civil Procedure and a recent decision by this court, *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.* (1990), 196 Ill. App. 3d 5.

In *Heritage*, a portion of property was acquired for the main traffic lanes of the tollway. (*Heritage*, 196 Ill. App. 3d at 9.) In the *Heritage* eminent domain proceeding, special benefits accruing to the property owner from the North-South Toll Road project were allowed to offset damages to the defendant's remainder. (*Heritage*, 196 Ill. App. 3d at 14.) The *Heritage* court specifically allowed evidence of special benefits accruing from interchange ramps, located approximately four blocks away from the taking, to offset damages

to the remainder. It did so even though the ramps were not constructed on land taken from the defendant, reasoning that the Tollway was constructed on the defendant's land and that the construction of the interchange ramps were part of the overall public improvement known as the North-South Toll Road project. 196 Ill. App. 3d at 14.

The defendants assert that the case at bar is distinguishable from *Heritage* and that *Heritage* should not be read so broadly as to cover the instant facts. For this position, the defendants rely on *Illinois State Toll Highway Authority v. Itasca Bank & Trust Co.* (1991), 216 Ill. App. 3d 926.

In *Itasca Bank*, the Authority acquired certain property near the intersection of Army Trail Road and the tollway. (216 Ill. App. 3d at 928.) The property acquired by the Authority was not used for the construction of the tollway itself. (216 Ill. App. 3d at 928.) The lower court in *Itasca Bank* denied the defendant's motion *in limine* to bar testimony of special benefits to the remaining land owned by the defendant. (216 Ill. App. 3d at 930.) The trial court reasoned that the "off-alignment" improvements, now adjacent to the defendant's remainder, were part of the tollway and necessary for its construction. (216 Ill. App. 3d at 930.) However, the appellate court held that unlike the facts in *Heritage*, "no part of the tollway is on the subject property," and "[n]one of the property taken was used for the actual tollway." (216 Ill. App. 3d at 931.) The court, therefore, held that the trial court erred as a matter of law in admitting evidence of special benefits from the tollway. 216 Ill. App. 3d at 932.

■ The facts in the instant case are similar to those in *Itasca Bank*. Here, the actual public improvement, *i.e.*, the North-South Tollway, is not located on *any* part of the defendants' property. The only part of the tollway project located on the defendants' property is compensatory wetlands. We decline to read *Heritage* as broadly as the Authority argues it should be read, and we find no compelling reason to reject the reasoning in *Itasca Bank*. Here there is no public improvement erected on the defendant's property (see Ill. Rev. Stat. 1991, ch. 110, par. 7—120), and the relationship between the North-South tollway and the defendants' remainder is too tenuous to consider the special benefits of the tollway to it. We therefore find that the court properly excluded the evidence of special benefits. *Itasca Bank*, 216 Ill. App. 3d at 932.

The Authority next argues that the defendants waived any request for interest at a rate greater than that mandated by the Code

of Civil Procedure (the Code) (Ill. Rev. Stat. 1991, ch. 110, par. 7—108(1)). Specifically, the Authority alleges that the defendants failed to make the necessary showing that the 6% rate of interest was constitutionally inadequate and that if they did satisfy this precondition, the determination of the proper interest rate should have been made by the jury, not by the court.

The Code provides that in eminent domain proceedings "[t]he plaintiff shall pay, in addition to the just compensation finally adjudged in the proceeding, interest at the rate of 6% per annum." (Ill. Rev. Stat. 1991, ch. 110, par. 7—108.) Under extraordinary circumstances, it is possible to exceed the 6% interest rate mandated in the Code. *Department of Transportation v. Rasmussen* (1982), 108 Ill. App. 3d 615, 628-29.

In *Rasmussen*, the prevailing interest rates at the time of the taking were more than double the statutory rate; under those circumstances, the court found that 6% was not constitutionally adequate for the property owner. (*Rasmussen*, 108 Ill. App. 3d at 628-29.) In reaching this finding, the *Rasmussen* court noted that deciding whether a given rate of interest is sufficient for just compensation is a "judicial function" and the statutory rate of interest applies only if it is constitutionally adequate. (*Rasmussen*, 108 Ill. App. 3d at 628.) The court additionally stated that the court may therefore treat the statutory guidelines in the Code as a minimum rate of interest and leave the question of the proper rate of interest to the "trier of fact." *Rasmussen*, 108 Ill. App. 3d at 629.

The defendants assert that it was not an error for the court to determine a higher rate of interest, after the jury was dismissed. They rely on *Department of Transportation ex rel. People v. Gass* (1988), 165 Ill. App. 3d 562, 568-69, for their argument that the interest rate is only a supplemental question of law for the trial court to determine. In *Gass*, the Appellate Court, Fifth District, addressed the issue of whether it is the role of the jury or the court to determine interest on an eminent domain award. (*Gass*, 165 Ill. App. 3d at 569.) *Gass* looked solely to the *Rasmussen* court for authority on this issue and it noted that *Rasmussen* stated both that the determination of the rate of interest is a "judicial function" and a function for the "trier of fact." (*Gass*, 165 Ill. App. 3d at 569, citing *Rasmussen*, 108 Ill. App. 3d at 628-29.) With no explanation, the *Gass* court held that the rate of interest is a supplemental question of law for the trial court to determine. *Gass*, 165 Ill. App. 3d at 569.

We disagree with the *Gass* court's analysis of *Rasmussen*. Read in context, the *Rasmussen* court stated that the determination of interest is a "judicial function" only to distinguish it from a legislative function. (See *Rasmussen*, 108 Ill. App. 3d at 628.) In this regard, *Rasmussen* merely explained that it was not the role of the legislature to determine what amount of interest was constitutionally adequate, whereas in the portion of the decision where the court decided if the jury verdict which set the interest rate at 12% was proper, the court clearly stated that "the proper rate of interest [is] a question for the trier of fact." *Rasmussen*, 108 Ill. App. 3d at 629.

■■ In this case, the defendants failed to timely request a higher rate of interest by the jury. We find the *Rasmussen* court's analysis on setting a rate of interest to be controlling in this case. Similarly, we conclude that *Gass*, upon which the defendants solely rely, erroneously interpreted *Rasmussen*. We hold that the defendants are precluded from a rate of interest higher than the statutory 6% because they failed to raise the issue for a jury determination as required by *Rasmussen*. See *Rasmussen*, 108 Ill. App. 3d at 629.

■■ Lastly, the Authority argues that based on the court's alleged errors the verdict was against the manifest weight of the evidence. We determine, based on our above discussion and because the jury verdict falls within the range of values stated in the appraisal testimony, that the verdict was not against the manifest weight of the evidence.

For the foregoing reasons, we affirm the decision of the circuit court of Du Page County insofar as it excluded evidence of the purchase price and special benefits. We reverse on the issue of the interest rate applicable to the award and remand the cause with instructions to recalculate the award based on a 6% rate of interest.

Affirmed in part; reversed in part and remanded with instructions.

WOODWARD and DOYLE, JJ., concur.