THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellant and Cross-Appellee, v. CARRIAGE HILLS KENNELS, Defendant-Appellee and Cross-Appellant.

First District (5th Division)    No. 1—92—1088

━━━━━━━

Opinion filed October 8, 1993.

Roland W. Burris, Attorney General, of Springfield (James D. Montgomery, Jean M. Templeton, and Sheldon R. Sobol, Special Assistant Attorneys General, of Chicago, of counsel), for appellant.

Barclay & Damisch, Ltd., of Chicago (John W. Damisch and Timothy D. Nimrod, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

The Illinois Department of Transportation (IDOT) appeals an order of the circuit court which allowed Carriage Hills Kennels (Carriage Hills) to recover from IDOT the attorney fees it expended in defending a condemnation action, as well as interest at the rate of 10% per annum on the unpaid compensation from the time of the taking until the time judgment was entered. Carriage Hills cross-appeals the trial court's exclusion of $8,450.49 expended for expert appraisers and other costs and asks this court to reinstate the excluded expenses as part of its just compensation.

Before considering the merits of this appeal and cross-appeal, we shall briefly review what transpired in the underlying condemnation action and the circumstances upon which Carriage Hills relies to support the award of attorney fees.

On January 21, 1988, IDOT initiated condemnation proceedings to acquire a temporary easement and fee simple title to parcels of property owned by Carriage Hills, for the purpose of widening Waukegan Road (Rt. 42) along the borders of the Villages of Northfield and Glenview. Prior to initiating suit, IDOT offered Carriage Hills $17,800 as compensation for the easement and property.

Carriage Hills, believing the offer to be unreasonable, refused the offer and obtained counsel to represent it in proceedings to determine just compensation.

On March 9, 1988, in a quick-take proceeding, IDOT acquired the subject property and Carriage Hills was awarded $22,000, based upon a preliminary finding of just compensation by the court. More than three years later, on June 13, 1991, a jury trial was held to determine Carriage Hills' just compensation for the taking of its property.

During this trial Carriage Hills examined IDOT's two expert appraisers, Tadrowski and Polach, concerning the comparable sales they used to assist them in arriving at their estimated fair market value for the subject property. Both appraisers testified that they independently researched and verified a number of comparable sales and provided IDOT with written appraisals. Both appraisers had included in their list of comparable sales an alleged sale of vacant land located at 211 Waukegan Road, which they considered when determining the fair market value of Carriage Hills' property. At trial, however, these appraisers admitted that this "comparable sale" was not a sale of vacant land, as they had previously testified, but a second mortgage on property containing an office building. Consequently, Tadrowski's testimony at the preliminary hearing and both appraisers' testimony at their discovery depositions concerning the efforts they had made in verifying the sale of this property could not have been correct.

Furthermore, Polach admitted at trial that, due in part to this error, his appraisal of the fair market value of the subject property had been too low. Carriage Hills then presented its own expert witness, who testified that his determination of the fair market value of the subject property, based upon other comparable sales that might have been considered, was much higher than was previously determined.

After all the evidence was presented at trial, the jury returned a verdict in favor of Carriage Hills in the amount of $62,369, which included $52,125 as just compensation for the property taken, plus an additional $10,147 for the temporary easement. On June 28, 1991, judgment was entered on this verdict.

Thereafter, on July 15, 1991, Carriage Hills filed a petition for reimbursement of attorney fees and costs, along with a request for 10% interest per annum on the unpaid balance of compensation due. In the petition Carriage Hills alleged that IDOT, by misrepresentation and fraud, attempted to take its property for far less than

market value, thereby compelling Carriage Hills to seek just compensation for its property through expensive and protracted litigation. In light of this fact, Carriage Hills argued the compensation to which it was constitutionally entitled was unfairly diminished by the sums of money expended for attorney fees and costs. Consequently, Carriage Hills contended that, to obtain full compensation under the circumstances, it would be necessary and proper for IDOT to pay the attorney fees and expenses Carriage Hills incurred in defending the condemnation action.

On July 31, 1991, the trial court entered an order granting Carriage Hills' petition. The court awarded Carriage Hills $23,716.49 for attorney fees and 10% interest on the unpaid balance. However, pursuant to IDOT's motions for reconsideration, the trial court held a hearing on Carriage Hills' petition for attorney fees. After this hearing, the trial court reduced the fee award to $15,266, disallowing the costs Carriage Hills incurred for hiring an expert appraiser and other expenses. The trial court denied IDOT's motions in all other respects, justifying its award of attorney fees, not on fraud, but upon a finding that IDOT's appraisers had been improperly prepared.

IDOT has brought this timely appeal from the final order of the trial court awarding Carriage Hills attorney fees and a rate of interest in excess of the statutory rate. The State Attorney General argues for IDOT that the order granting Carriage Hills its attorney fees should be reversed and that Carriage Hills should be awarded interest at the statutory rate of 6% per annum. (See Ill. Rev. Stat. 1991, ch. 110, par. 7—108.) It is IDOT's position that the trial court had no authority, constitutionally, statutorily or otherwise, to grant Carriage Hills attorney fees in this action. IDOT also contends that there was no basis for the trial court's award of interest at a rate greater than the 6% provided for by statute.

Carriage Hills, however, urges this court to uphold the trial court's ruling with regard to attorney fees and interest, but reverse the trial court's reduction of the fee award which excluded costs associated with Carriage Hills' expert appraiser.

For reasons that follow, we reverse in part and remand for further proceedings.

The first issue before this court is whether a condemnee, such as Carriage Hills in this case, may recover attorney fees and other costs expended as a result of the eminent domain or condemnation proceedings. Carriage Hills contends that the recovery of these expenses is authorized by the Federal Constitution, our State Consti-

tution, or, in the alternative, Illinois statutory law or supreme court rule.

Both the Federal Constitution and our State Constitution provide that no one shall be deprived of property without due process of law and that one's property cannot be taken for public use without the payment of "just compensation."

Specifically, within the fifth amendment of the United States Constitution, it states:

> "nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const., amend. V.

In the 1970 Illinois Constitution, article I, section 2, it states:

> "No person shall be deprived of life, liberty or property without due process of law ***."

And article I, section 15, states:

> "Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law." Ill. Const. 1970, art. I, §15.

What is meant by the term "just compensation," within the context of these provisions, is neither defined nor described in either constitution. Carriage Hills' main and most forceful argument, however, is that attorney fees and other expenses may be included in this term.

■ However, at least with regard to the Federal Constitution, courts have determined that "just compensation" does not encompass attorney fees and expenses. (See *Dohany v. Rogers* (1930), 281 U.S. 362, 74 L. Ed. 904, 50 S. Ct. 299 (wherein the court held that "attorney fees and expenses are not embraced within just compensation for land taken by eminent domain").) As noted in *United States v. Bodcaw Co.* (1979), 440 U.S. 202, 203, 59 L. Ed. 2d 257, 259, 99 S. Ct. 1066, 1066, from as far back as 1893, the one principle from which courts have not deviated is that just compensation is for the property and not to the owner. Thus, indirect costs to the property owner have generally not been deemed part of the constitutionally mandated "just compensation" owed to the property owner. (See also *Rhodes v. City of Chicago* (7th Cir. 1975), 516 F.2d 1373 (which held that neither the United States Constitution nor Illinois statutory law provided for an award of attorney fees in eminent domain cases).) IDOT advocates this court's adherence to *stare decisis*.

Carriage Hills concedes that courts have generally interpreted the term "just compensation" strictly, excluding attorney fees and litigation expenses from a condemnee's entitlement under the provisions of the Federal Constitution. Nonetheless, Carriage Hills advocates a departure from *stare decisis*, arguing that a perpetuation of the "manifest injustice" of the *Dohany* decision is "grossly unfair." Carriage Hills encourages this court to take this opportunity to overturn the *Dohany* decision and create new law which recognizes that for a condemnee to obtain true "just compensation" he must be reimbursed all expenditures made in defending a condemnation action.

Despite the seeming logic in the arguments presented by Carriage Hills, we are unpersuaded that it would be proper to take up the standard it champions. This country's system of justice follows the "American Rule," which requires each party to bear its own litigation expenses. We can think of few instances where a successful party to litigation of any type would not argue that adherence to the American Rule constitutes a manifest unfairness because it diminishes the compensation to which it is rightfully entitled. Consequently, we see no reason to treat eminent domain actions differently and find no violation of the Federal Constitution in the court's interpretation of the term "just compensation" in a manner that excludes litigation expenses. Therefore, we will not diverge from the long-standing law on this issue.

While we recognize that it has never been determined whether our State Constitution affords any greater rights to condemnees than the Federal Constitution, we find no reason to hold that our State Constitution requires a broader interpretation of the term "just compensation" than the Federal Constitution does. As noted by IDOT, case law dictates that when provisions contained within the State and Federal Constitutions are virtually the same, they should be interpreted consistently. (See *Fumarolo v. Chicago Board of Education* (1990), 142 Ill. 2d 54, 70-71, 566 N.E.2d 1283; *People v. Givens* (1985), 135 Ill. App. 3d 810, 482 N.E.2d 211.) In addition, the term "as provided by law" contained within our State Constitution in reference to the determination of just compensation indicates to us that attorney fees and expenses should not be allowed unless specifically provided for by our laws on eminent domain. Since Illinois statutory law does not make reference to attorney fees, except in certain instances which are not relevant here, we must assume that reimbursement of attorney fees is not required as part of just compensation by our State Constitution.

Having determined that our Federal and State constitutions do not require, in general, reimbursement of attorney fees and expenses under the term "just compensation," we must now consider whether attorney fees and expenses should be recoverable under the facts of this case as an exception to the general rule. Carriage Hills claims that the possibility of exceptions to the general rule was recognized by the court in *Bodcaw*.

It is true that in *Bodcaw* the United States Supreme Court indicated that "[t]here may be exceptions to this general rule." (*Bodcaw*, 440 U.S. at 203, 59 L. Ed. 2d at 259, 99 S. Ct. at 1067.) However, the only "exception" noted was the court of appeals' decision in *United States v. Lee* (5th Cir. 1966), 360 F.2d 449, where the court allowed, as part of the compensation award, the owner's expenses in having a survey made of the land to be taken. We note that the *Bodcaw* Court did not affirm the decision in *Lee*, but merely stated that "if correctly decided," the case was distinguishable because in *Lee* the government had misrepresented the amount of land to be taken, necessitating the owner's survey. *Bodcaw*, 440 U.S. at 203 n.2, 59 L. Ed. 2d at 259 n.2, 99 S. Ct. at 1067 n.2.

Our first observation is that *Lee*, even if a true exception to the general rule, did not involve attorney fees. Secondly, *Lee* was based upon misrepresentation, and in the present case, despite Carriage Hills' allegations of fraud and misrepresentation, the trial court specifically held that there was no fraud and that the appraisal errors were due to a lack of preparation. Consequently, the present case is not within the exception created by *Lee* and would appear to be more closely related to the situation in *Bodcaw, i.e.*, "the rather typical, oft-recurring situation where the landowner is dissatisfied with the Government's valuation." *Bodcaw*, 440 U.S. at 203, 59 L. Ed. 2d at 259, 99 S. Ct. at 1067.

Looking upon the *Bodcaw* decision as a whole, it reaffirmed the general rule that the constitution does not mandate that a landowner's expenses incurred as a result of a condemnation action, including attorney fees, be compensable. A compensation award for these expenses may only be granted where provided for by legislative action. Although Carriage Hills makes some attempt to have this court affirm the award of attorney fees by reference to statutory provisions (Ill. Rev. Stat. 1989, ch. 110, par. 7—122) and Supreme Court Rule 137 (134 Ill. 2d R. 137), it is clear to this court that no statutory provision provides for attorney fees under the facts of this case and Rule 137 does not apply since the trial court

specifically rejected the idea that attorney fees were being awarded as a sanction.

In *Department of Conservation v. Jones* (1978), 63 Ill. App. 3d 402, 380 N.E.2d 470, the Illinois Appellate Court, Second District, rejected the contention that a trial court should have the discretion to award attorney fees and costs where the amount of the award in the eminent domain proceeding substantially exceeded the final offer of the condemning body. The court held that legislative action would be the appropriate forum to remedy the perceived unfairness and injustice of the situation. We agree.

It is not for this court, but for the legislature, to implement the type of changes which are advocated here. This is so for a number of reasons. Primarily, as noted at oral argument in this case, it is because the public policy considerations and other variables that must be contemplated in resolving the question of whether compensation for attorney fees and expenses associated with condemnation proceedings should be awarded, are complex and unsuited to be determined by a court of law.

■ We now turn our attention to the second issue in this case, whether a 10% rate of interest should have been awarded. It is IDOT's position that Carriage Hills should have been limited to the statutory rate of 6% because (1) Carriage Hills failed to demonstrate the necessity for awarding interest above the statutory rate, or (2) Carriage Hills waived any right to a higher interest rate by failing to raise the issue during the compensation trial. In the event that this court finds that an interest rate greater than the statutory rate was proper, IDOT contends that the case should be remanded because Carriage Hills failed to present competent evidence from which the trial court could have determined an appropriate rate of interest to be awarded.

Article 7 of the Illinois Code of Civil Procedure deals with matters of eminent domain. (Ill. Rev. Stat. 1989, ch. 110, par. 7—101 *et seq.*) Section 7—108, contained within this article, states in pertinent part:

> "The plaintiff shall pay, in addition to the just compensation adjudged in the proceeding, interest at the rate of 6% per annum upon:
>
> (1) Any excess of the just compensation so finally adjudged, over the amount preliminarily found by the court to be just compensation in accordance with Section 7—104 of this Act, from the date on which the parties interested in the property surrendered possession of the property in accord-

ance with the order of taking, to the date of payment of such excess by the plaintiff." Ill. Rev. Stat. 1989, ch. 110, par. 7—108(1).

Thus, according to the applicable statutory provision, Carriage Hills was entitled to receive 6% interest on the amount of just compensation awarded which was in excess of the original award of just compensation determined at the "quick-take" proceedings.

However, in 1982 the Illinois Appellate Court, Second District, in *Department of Transportation v. Rasmussen* (1982), 108 Ill. App. 3d 615, 439 N.E.2d 48, determined that, when property is acquired pursuant to the "quick-take" provision of the eminent domain statute, the constitutional requirement of just compensation for the taking includes the interest for the delay in payment from the date of the taking. In addition, the *Rasmussen* court held:

"The determination of whether a given rate of interest is sufficient for just compensation is a judicial function and the statutory rate of interest applies only if it is constitutionally adequate." 108 Ill. App. 3d at 628.

In consideration of the fact that prevailing rates of interest were more than twice the statutory rate and citing with favor the decisions in *United States v. Blankinship* (9th Cir. 1976), 543 F.2d 1272, and *Miller v. United States* (Ct. Cl. 1980), 620 F.2d 812, which held that 6% interest was insufficient for just compensation, the *Rasmussen* court held that, for the period of time involved in the case (approximately December 1979 until September 1982), the statutory 6% rate of interest was constitutionally inadequate and should be considered a statutory minimum, with the proper rate of interest to be decided by "the trier of fact." *Rasmussen*, 108 Ill. App. 3d at 629.

Subsequently, the Fifth District of our Appellate Court, in *Department of Transportation ex rel. People of the State of Illinois v. Gass* (1988), 165 Ill. App. 3d 562, 519 N.E.2d 90, resolved what it termed an "ambiguity" within the *Rasmussen* decision as to whether the proper rate of interest is a question of law or fact. The *Gass* court held that the matter was a supplemental issue of law to be determined by the court. The court affirmed the trial court's supplemental judgment award of 12¾% interest on the amount of just compensation, determined by the jury, in excess of the quick-take amount already paid.

Recently, the Appellate Court, Second District, once again was called upon to consider this matter. (See *Illinois State Toll Highway Authority v. American National Bank & Trust Co.* (1992), 236 Ill.

App. 3d 696, 606 N.E.2d 147.) The *American National* court held that the defendant was precluded from receiving a rate of interest higher than the statutory rate because the defendant failed to request a higher rate of interest at the time of trial. The court considered the decisions in both *Rasmussen* and *Gass* and determined that *Gass* had improperly interpreted *Rasmussen*. *American National* interpreted *Rasmussen* to say that it was a question of law for the court to decide whether the statutory rate of 6% was insufficient, but that the determination of the appropriate rate of interest above the statutory rate was an issue for the jury to decide.

Clearly, the *Gass* case and the *American National* case create a split of authority. We, however, find that the *Gass* court properly held that it is a post-judgment or supplemental question of law for the court to determine whether the statutory rate of interest is insufficient and to set the proper rate(s) of interest for the period of time involved. As indicated in the cases cited by *Rasmussen*, this may include several different interest rates for the various periods within the overall time period concerned. See for example, *Miller v. United States* (Ct. Cl. 1980), 620 F.2d 812 (where the court fixed an interest rate of 6½% for 1968-70, 7½% for 1971-75, 8½% for 1976-79, and 12% for 1980 to the date of payment).

We do agree with IDOT, however, that there was insufficient evidence presented to the trial court from which the court could have made a reasoned decision on the proper rate of interest for the period of time involved. The *Rasmussen* court noted that when determining an appropriate rate of interest, courts relied most heavily upon yields from high-grade corporate bonds, and yields from government securities, such as treasury bonds. In this case, there was no competent evidence presented on the issue of what interest rate would be appropriate. Consequently, we remand to the trial court for a new hearing to determine whether the statutory interest rate of 6% was insufficient and, if so, to determine what rate(s) of interest would be appropriate based upon the evidence presented.

For the reasons stated above, we reverse in part and remand for further proceedings.

Reversed in part and remanded.

McNULTY and COUSINS, JJ., concur.