(Nos. 74738, 74798 cons.—

(No. 76434.—

THE ILLINOIS STATE TOLL HIGHWAY AUTHOR-
ITY, Appellant, v. AMERICAN NATIONAL
BANK & TRUST COMPANY OF CHICAGO, as
Trustee under Trust Agreement dated March 1,
1985, and known as Trust No. 63551, *et al.*, Appel-
lees.—THE ILLINOIS STATE TOLL HIGHWAY
AUTHORITY, Appellee, v. BANK OF RAVENS-
WOOD, as Trustee under Trust Agreement dated
December 31, 1984 and known as Trust No. 25—
6886, *et al.*, Appellants.—THE ILLINOIS DE-
PARTMENT OF TRANSPORTATION, Appellee,
v. CARRIAGE HILLS KENNELS, INC., Appel-
lant.

*Opinion filed October 27, 1994.*

NICKELS, J., joined by BILANDIC, C.J., and McMORROW, J., dissenting.

Roland W. Burris, Attorney General, of Springfield, and Thomas F. Geselbracht, Special Assistant Attorney General, of Chicago (Frank M. Howard and Paul Olszewski, Assistant Attorneys General, of Downers Grove, of counsel), for appellant and appellee Illinois State Toll Highway Authority.

Roger A. Ritzman, of Peregrine, Stime, Newman, Ritzman & Bruckner, Ltd., of Wheaton, for appellees and appellants American National Bank & Trust Co. *et al.*

Barclay & Damisch, Ltd., of Chicago (John W. Damisch and Michael Svanascini, of counsel, and Daniel J. Arnett, law student), for appellant.

Roland W. Burris, Attorney General, of Springfield, and James D. Montgomery, Jean M. Templeton, Sheldon R. Sobol and Thomas F. Geselbracht, Special Assistant Attorneys General, of Chicago (Frank M. Howard and Paul Olszewski, Assistant Attorneys General, of Downers Grove, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Before us are three consolidated appeals involving quick-take condemnation actions brought by agencies of the State of Illinois under the Eminent Domain Act (Ill. Rev. Stat. 1991, ch. 110, par. 7—101 *et seq.*). The common issue these cases present is whether the interest due on the difference between the jury's final compensation award and the amount of compensation preliminarily found by the court should be determined by the jury or the trial judge. Also presented for our review are (1) whether the circuit court erred in one of the actions when it excluded evidence of special benefits that the landowners would receive as a result of the public improvement for which the condemnation proceedings were instituted, and (2) whether the circuit court erred in another of the actions when it awarded the landowners their attorney fees.

We first consider cause Nos. 74738 and 74798, where the Illinois State Toll Highway Authority (the Highway Authority) sought to acquire various parcels of land owned by land trusts for which the American National Bank and Trust Company of Chicago and the Bank of Ravenswood served as trustees. The record shows that these landowners held 21 out of 22 parcels of land in a certain subdivided block in unincorporated Du Page County. The 21 parcels covered an area of just over 100,000 square feet. They were vacant and had no water or sewer service.

The Highway Authority initiated two separate condemnation proceedings to acquire 13 of the 21 parcels by right of eminent domain. The first action sought lots 10, 11, and 12. The second sought lots 9, 13, 15, 16, 17, 18, 19, 20, 21, and 22. The Highway Authority wanted to acquire these parcels for highway purposes, specifically, the North-South Tollway project. All 13 lots were located on the west side of the North-South

Tollway, between Du Page Boulevard and Roosevelt Road. Most of the land was needed by the Highway Authority as a place to construct new or "compensatory" wetlands required by the United States Army Corps of Engineers to replace preexisting wetlands destroyed during construction of the tollway. The remaining lots were needed by the Highway Authority to provide access to an existing utility easement.

The Highway Authority moved to take title to lots 10, 11, and 12 immediately pursuant to the quick-take provision of the Eminent Domain Act (Ill. Rev. Stat. 1991, ch. 110, par. 7—103). Following a hearing, the circuit court entered an order on September 23, 1987, granting the motion and making a preliminary finding of just compensation in the amount of $51,300. (Ill. Rev. Stat. 1991, ch. 110, par. 7—104.) After the Highway Authority deposited that sum with the county treasurer (Ill. Rev. Stat. 1991, ch. 110, par. 7—105), the court entered an order on October 8, 1987, vesting title to the three lots in the Highway Authority. It also ordered the county treasurer to pay the owners, or their attorneys, the $51,300 deposited by the Highway Authority. Ill. Rev. Stat. 1991, ch. 110, par. 7—106.

The Highway Authority subsequently followed the same quick-take procedure with respect to the remaining 10 lots. In that proceeding, the court made a preliminary finding of just compensation on February 8, 1988, in the amount of $125,000. The Highway Authority duly deposited that sum with the county treasurer, and on March 8, 1988, the court entered an order vesting title to the 10 lots in the Highway Authority.

The circuit court subsequently consolidated the two condemnation proceedings. A jury trial was then held to obtain a final determination of the amount of just compensation for the 13 lots that were taken and to determine whether the Highway Authority owed dam-

ages for injury to the eight lots that remained in the land trusts.

At the outset of the trial, the landowners filed a motion *in limine* to bar the Highway Authority from presenting any evidence or making any argument concerning special benefits that might inure to the owners as a result of the tollway. That motion was granted, and the matter proceeded to a trial on the merits. The jury ultimately returned a verdict that awarded the owners $603,571 as just compensation for the taking of the 13 lots and $176,673 as damages for harm to the lots that remained.

The circuit court entered judgment on the verdict on September 6, 1988. In that judgment, the court allowed interest on both the just compensation and damage awards. Interest on the damage award was set at an annual rate of 6% for the period beginning on December 1, 1987, and continuing until the Highway Authority deposited the funds with the Du Page County treasurer. The court selected the December 1 date because it fell midway between the dates of the two quick-take orders on the 13 lots lost in the condemnation. The court reasoned that this was an appropriate beginning date because the damage to the remaining lots resulted from the loss of frontage and the diminution in size of the owners' holdings caused by those takings.

With respect to the lots that were taken, the interest calculation was more complex. To lots 10, 11, and 12, which were the subject of the first quick-take, the court allocated $111,208.59 of the $603,571 final verdict. It subtracted from that sum the preliminary compensation of $51,300, leaving a difference of $59,908.59. The court then assessed interest on that amount at the rate of 8.7%, beginning on September 23, 1987, the date of the first preliminary finding of just compensation, and

continuing until the Highway Authority deposited the funds with the county treasurer.

The court followed the same formula with respect to the other 10 lots. From the $492,362.41 balance of the final verdict it subtracted the preliminary compensation award of $125,000, leaving a difference of $367,362.41. On this amount the court assessed interest at the rate of 9%, commencing February 10, 1988, the date of the second preliminary finding of just compensation, and continuing until the funds were deposited with the county treasurer.

Following denial of its post-trial motion, the Highway Authority appealed. On that appeal, the appellate court rejected the Authority's argument that the circuit court erred in excluding evidence that benefits had inured to the landowners as a result of the tollway's construction. The only fault found by the appellate court was with the circuit court's interest calculations. It held that the circuit court should not have required the Authority to pay interest at a rate in excess of the 6% statutory rate fixed by the Eminent Domain Act (Ill. Rev. Stat. 1991, ch. 110, par. 7—108) on the difference between the amounts paid in the quick-take proceedings and the sum awarded by the jury. It therefore affirmed all aspects of the judgment except for the amount of interest. On that issue it reversed and remanded with instructions to recalculate the award based on the 6% statutory rate. 236 Ill. App. 3d 696.

In ruling as it did, the appellate court did not question the proposition that the interest allowable in a condemnation action could exceed the statutory rate. The basis for its decision was waiver. The court held that the landowners' entitlement to additional interest was a question for the jury's determination. In this case, however, the owners had failed to make a timely request for the jury to award a higher rate of interest. They did not ask for additional interest until after the verdict

had been returned. The court therefore concluded that the landowners were precluded from receiving anything above the statutory rate. 236 Ill. App. 3d at 704.

Both the Highway Authority and the landowners petitioned for leave to appeal (134 Ill. 2d R. 315), and we granted their respective petitions. In their appeal to this court, the landowners first challenge the appellate court's holding that the question of additional interest is a matter for the jury's determination. They assert that the matter is for the trial judge to decide after the verdict has been returned. Because the circuit court did make the decision here, the owners urge us to reinstate that court's judgment in full and to set aside that portion of the appellate court's judgment dealing with the interest question.

Where, as here, the government takes possession of property in a quick-take proceeding, an interest award must be made on the difference between the amount of just compensation finally adjudicated and the amount preliminarily found by the court to be just compensation. This is a statutory requirement (Ill. Rev. Stat. 1991, ch. 110, par. 7—108(1)), but it is more than that. The payment of interest where the government takes possession before making full payment is mandated by the takings clause of the fifth amendment to the United States Constitution (U.S. Const., amend. V; *Seaboard Air Line Ry. Co. v. United States* (1923), 261 U.S. 299, 305-06, 67 L. Ed. 664, 669, 43 S. Ct. 354, 356; *United States v. 50.50 Acres of Land* (9th Cir. 1991), 931 F.2d 1349, 1355), which is applicable to the States through the fourteenth amendment (*Dolan v. City of Tigard* (June 24, 1994), No. 93—518, 62 USLW 4576, 4578). It is also compelled by the just compensation provision in article I, section 15, of the 1970 Illinois Constitution (Ill. Const. 1970, art. I, § 15). *Department of Conservation v. Jones* (1979), 75 Ill. 2d 557, 564.

The constitutional requirement for interest is

codified in section 7—108 of the Eminent Domain Act (Ill. Rev. Stat. 1991, ch. 110, par. 7—108). Although that statute purports to set an interest rate at 6% per year on the difference between the preliminary compensation amount found by the court in the quick-take proceedings and the sum finally awarded by the jury, the 6% rate is not binding. The United States Supreme Court has held that the ascertainment of just compensation under the fifth amendment is a matter for the courts rather than the legislature. (*Monongahela Navigation Co. v. United States* (1893), 148 U.S. 312, 327, 37 L. Ed. 463, 468, 13 S. Ct. 622, 626.) Because just compensation embraces the interest due where the court's preliminary award falls short of the jury's final award, that interest is likewise a matter for judicial, rather than legislative determination. Accordingly, statutory directives that purport to fix the rate of interest in such cases are outside the bounds of legislative authority. See *United States v. 50.50 Acres of Land* (9th Cir. 1991), 931 F.2d 1349, 1354-55.

It is true that the interest rate set by a statute can be applied to a claim for just compensation if the rate is reasonable and judicially acceptable. The Federal courts have held, however, that such rates do not operate as a ceiling on the amount that may be awarded. Rather, the rate statutes must be construed as doing nothing more than establishing a floor on the rate allowable for compensation under the fifth amendment. (*United States v. 50.50 Acres of Land* (9th Cir. 1991), 931 F.2d 1349, 1354-55; *United States v. 125.2 Acres of Land* (1st Cir. 1984), 732 F.2d 239, 244-45; *Washington Metropolitan Area Transit Authority v. One Parcel of Land* (4th Cir. 1983), 706 F.2d 1312, 1322; *Miller v. United States* (Ct. Cl. 1980), 620 F.2d 812, 837; *United States v. Blankinship* (9th Cir. 1976), 543 F.2d 1272, 1276.) This construction is necessary in order to avoid having to declare the

statute invalid in those cases where the specified rate is constitutionally inadequate given the factual circumstances of the case. It honors the principle that we have a duty to construe acts of the legislature so as to affirm their constitutionality whenever we can reasonably do so. See *Miller*, 620 F.2d at 837-38.

Our appellate court has followed these principles (*Department of Transportation v. Rasmussen* (1982), 108 Ill. App. 3d 615, 628-29), and the parties before us do not contest their validity. The question we are asked today is whether the appropriate rate of interest should be decided by the trial judge or the jury.

Federal law provides no guidance on this question. Under the Federal Constitution there is no right to a jury trial in an eminent domain proceeding. In Federal court, the distribution of responsibilities between judge and jury is governed by Rule 71A(h) of the Federal Rules of Civil Procedure (*United States v. 320.0 Acres of Land* (5th Cir. 1979), 605 F.2d 762, 807), which is inapplicable to State court proceedings.

In Illinois, the matter is controlled by article I, section 15, of our constitution (Ill. Const. 1970, art. I, § 15). That provision specifically states that just compensation for private property taken or damaged for public use "shall be determined by a jury as provided by law." (Ill. Const. 1970, art. I, § 15.) Because interest on the difference between the preliminary compensation amount found by the court in the quick-take proceedings and the sum finally awarded by the jury is an element of just compensation (*Jones*, 75 Ill. 2d at 564), the appropriate rate of interest must likewise "be determined by a jury as provided by law." To the extent that *Department of Transportation ex rel. People v. Gass* (1988), 165 Ill. App. 3d 562, held otherwise, it is overruled.

The language "as provided by law" contained in

article I, section 15 (Ill. Const. 1970, art. I, § 15), means that the requirements for jury trials in eminent domain actions are within the General Assembly's authority to determine. (ILCS Ann., 1970 Const., art. I, § 15, Constitutional Commentary, at 878 (Smith-Hurd 1993).) The law enacted by the General Assembly pursuant to this authority is set forth in section 7—101 of the Eminent Domain Act (Ill. Rev. Stat. 1991, ch. 110, par. 7—101). Under that statute both the State and the landowner have the right to a jury trial if they make a proper demand.

In the matter before us, the Highway Authority did make an appropriate jury demand, and a jury trial was held to obtain a final determination of the amount of just compensation owed to the landowners. Based on the authorities we have just discussed, it is clear that the amount of interest due on the difference between the amount of just compensation finally adjudicated and the amount preliminarily found by the court to be just compensation could therefore have been submitted to the jury at that trial as part of its final determination as to just compensation.

The Highway Authority argues the interest award could not exceed the statutory rate because the landowners did not request that the matter be decided by the jury. A threshold problem with this argument is that the right to demand a jury trial on the interest claim was not limited to the landowners alone. As we have just discussed, section 7—101 of the Act (Ill. Rev. Stat. 1991, ch. 110, par. 7—101) confers that right on the Highway Authority as well. Prior to the jury's verdict, however, it made no more of an effort to have the interest rate set by the jury than did the landowners. All of the parties, in effect, waived jury consideration of the issue. Under these circumstances, the Highway Authority will not be heard to complain that the interest rate was set by the judge rather than the jury.

The Highway Authority's argument is also flawed in that it seems to assume that because the landowners had a right to a jury trial on the interest question, jury consideration of the interest rate was compulsory. Such is not the case. Section 7—101 of the Act (Ill. Rev. Stat. 1991, ch. 110, par. 7—101) not only confers the right to a jury trial, it also makes clear that the right to a jury trial may be waived. The statute expressly provides that if no party makes a jury demand, the case is tried before the court without a jury. Because the parties have a right to waive a jury entirely, it would be anomalous to hold that they could not likewise waive the right to jury consideration of this one aspect of their dispute.

A final defect in the Highway Authority's argument is its assumption that the 6% statutory rate somehow limits a trial judge's determination even though it would not be binding on the jury. The statutory rate is never a binding upper limit. As the previous discussion showed, the 6% rate cannot operate as a ceiling on the amount of interest recoverable without violating the takings clause of the fifth amendment. There is no principled basis for modifying this rule depending on who serves as the trier of fact. It is no less applicable when the matter is decided by the court than it is when the issue is decided by the jury.

For all of these reasons, we must conclude that the appellate court erred in setting aside the circuit court's interest calculations and remanding the cause for reconsideration of the amount of interest due. That portion of the circuit court's judgment awarding interest should have been affirmed.

The dispute over the interest calculations pertained solely to the landowners' claim for just compensation for the 13 lots actually taken by the Highway Authority. The remaining question before us in cause Nos. 74738 and 74798 pertains to the landowners' claim that they

were entitled to damages because the condemnation caused the eight lots not taken to suffer a loss in value.

At issue is the circuit court's order granting the landowners' motion *in limine* to exclude evidence of special benefits. By prevailing on the motion, the landowners succeeded in barring the Highway Authority from adducing evidence that the diminution in value of the remaining eight parcels was offset by benefits the landowners received as the result of the proximity of those parcels to the North-South Tollway. The appellate court found no error in this, reasoning that it would be improper to consider special benefits to the remaining parcels caused by the tollway where, as here, no part of the tollway was erected on the property taken by the Highway Authority. In the appellate court's words, "the relationship between the North-South tollway and the defendants' remainder is too tenuous to consider the special benefits of the tollway to it." 236 Ill. App. 3d at 702.

In reviewing the appellate court's decision, we begin with the long-established principle that the measure of damages to the property not taken is the difference between the fair market value of the property prior to the improvement and the fair market value of the property as affected by the improvement. (*Department of Public Works & Buildings v. Divit* (1962), 25 Ill. 2d 93, 100-01; *Kane v. City of Chicago* (1945), 392 Ill. 172, 177.) This standard takes into account both injuries caused by the improvement and special benefits that result from the improvement. *Department of Public Works & Buildings v. Barton* (1939), 371 Ill. 11, 17.

The reason special benefits must be allowed to offset injuries is evident. Neither the constitution nor the law authorizes a recovery if there is no damage, and "it goes without saying that damages cannot exist if the value of the property is not lessened, but on the contrary is enhanced." *Kane*, 392 Ill. at 177.

Under the law, special benefits are any benefits to the property that enhance its market value and are not conjectural or speculative. (*Sanitary District v. Boening* (1915), 267 Ill. 118, 124.) The Highway Authority's appraisers testified at their depositions that such special benefits were present here. Indeed, they stated that the diminution in value of the property not taken would have been fully offset by an increase in the value attributable to its proximity to the tollway.

In granting the landowners' motion *in limine*, the circuit court prevented this special benefit testimony from being presented to the jury. It did so based on section 7—120 of the Eminent Domain Act (Ill. Rev. Stat. 1991, ch. 110, par. 7—120), which provides,

"In assessing damages or compensation for any taking or property acquisition ***, due consideration shall be given to any special benefit that will result to the property owner from any public improvement to be erected on such property."

The appellate court reasoned that this statute did not authorize admission of the testimony because no part of the tollway was erected on the lots taken in the condemnation. In our view, however, such a conclusion reflects an excessively restrictive construction of the statute. Although it is true that no part of the actual concrete pavement passed over any part of the landowners' property, the property taken was to be used for the construction of compensatory wetlands and access to a utility easement required for the tollway project. Because the wetlands and easement access were necessary parts of the project, we believe that they must be considered as much a part of the tollway as the traffic lanes and interchanges. In this sense, the tollway was erected on the parcels taken in the condemnation, and the terms of section 7—120 (Ill. Rev. Stat. 1991, ch. 110, par. 7—120) were therefore satisfied.

We note, moreover, that section 7—120 of the Act

(Ill. Rev. Stat. 1991, ch. 110, par. 7—120) is not the only statute applicable here. Section 7—119 (Ill. Rev. Stat. 1991, ch. 110, par. 7—119) expressly provides that evidence is admissible as to "any benefit to the landowner that will result from the public improvement for which the eminent domain proceedings were instituted." Under the clear and unambiguous language of this statute, evidence of benefits from the improvement may be adduced regardless of where the improvement was erected. Unlike section 7—120, this statute does not require the public improvement to have been erected on the property taken. Wholly aside from section 7—120, the decision to exclude the appraisers' testimony was therefore erroneous.

The landowners contend that any error in excluding the appraisers' testimony does not warrant reversal. We disagree. A condemnation award will be set aside on review and a new trial directed if the trial court made an erroneous ruling which might have misled the jury and which amounts to prejudicial error. (*Department of Public Works & Buildings v. Oberlaender* (1969), 42 Ill. 2d 410, 418.) With respect to the question of damages, this is such a case. We therefore reverse and remand for a new trial limited to the question of damages to the property not taken.

We turn then to cause No. 76434, which involves a condemnation action wholly unrelated to the one we have just discussed. In that case, the Illinois Department of Transportation (the Department) initiated condemnation proceedings in the circuit court of Cook County to acquire a temporary easement and fee simple title to parcels of property owned by Carriage Hills Kennels (Carriage Hills). The Department needed the property in order to widen a section of Waukegan Road in the Village of Glenview.

The Department moved to acquire the temporary

easement and to take title to the property immediately pursuant to the quick-take provision of the Eminent Domain Act (Ill. Rev. Stat. 1991, ch. 110, par. 7—103). Following a hearing, the circuit court entered an order granting the motion and making a preliminary finding of just compensation in the amount of $22,000. (Ill. Rev. Stat. 1991, ch. 110, par. 7—104.) After the Highway Authority deposited that sum with the county treasurer, the court entered an order vesting the Department with title to the subject property. Ill. Rev. Stat. 1991, ch. 110, par. 7—105.

A jury trial was subsequently held to obtain a final determination of the amount of just compensation the Department should be required to pay. After hearing the evidence, the jury returned a verdict in the amount of $62,369, which included $52,125 for the property taken and $10,147 for the temporary easement. Carriage Hills then moved for an award of interest at the rate of 10% on the difference between the jury's award and the preliminary compensation amount found by the court in the quick-take proceeding. It also sought an award of its attorney fees and costs.

The circuit court entered judgment on the jury's verdict and allowed interest at the 10% rate sought by Carriage Hills. The court also awarded Carriage Hills its attorney fees in the amount of $15,266. On the Department's appeal, the appellate court subsequently reversed that portion of the circuit court's judgment awarding the attorney fees. It also set aside the award of interest. In so doing, the appellate court rejected the Department's argument that Carriage Hills was precluded from obtaining interest beyond the 6% statutory rate (Ill. Rev. Stat. 1991, ch. 110, par. 7—108) because the company had not submitted the question to the jury. It held, however, that insufficient evidence had been presented to the trial judge here regarding the rate that

should have been applied. It therefore remanded for a new hearing to determine whether the 6% statutory interest rate (Ill. Rev. Stat. 1991, ch. 110, par. 7—108) was insufficient and, if so, what rate or rates of interest would be appropriate. In all other respects, the court affirmed the circuit court's judgment. 255 Ill. App. 3d 43.

We granted Carriage Hills' petition for leave to appeal (134 Ill. 2d R. 315) and consolidated the case with cause Nos. 74738 and 74798. On this appeal, Carriage Hills argues that the appellate court erred in reversing and remanding for reconsideration of the interest award. In addressing this argument, we note, as a preliminary matter, that while the appellate court was correct in concluding that the trial court could resolve the interest question here, the reasons it gave were incorrect.

The appellate court opined that whether interest should be awarded in excess of the 6% rate set forth in section 7—108 of the Eminent Domain Act (Ill. Rev. Stat. 1991, ch. 110, par. 7—108) is a question that the court must determine after trial. As we discussed in connection with cause Nos. 74738 and 74798, this is not so. The parties are entitled to have a jury determine the interest due on the difference between the amount of compensation finally adjudicated and the amount preliminarily found by the court in the quick-take proceeding. They are equally entitled, however, to waive jury consideration of the issue. As with cause Nos. 74738 and 74798, that is, in effect, what the parties did in this case. It is for this reason that the interest question became a proper subject for the trial court's determination in the matter before us.

The appellate court set aside the trial court's interest award on the grounds that there was insufficient evidence from which the court could have made a

reasoned decision on the proper rate of interest for the period of time involved. In assailing this ruling, Carriage Hills points to the testimony of the three appraisers called at trial. Those appraisers testified as to the rate of return on real estate investments at the time. The State's appraisers set the rate at 10%, while the appraiser hired by Carriage Hills used a rate of 15%.

The problem, as the appellate court apparently recognized, is that these figures were used by the appraisers only in the context of valuing Carriage Hills' loss in connection with the temporary easement. The rate of return on real estate investments is a meaningful measure in setting the value of the easement, for it helps establish how much Carriage Hills could have earned on the property during the easement's term. The concern here, however, was not how much Carriage Hills could have earned on a parcel of real estate. Rather, it was how much Carriage Hills could have earned on the extra money it would have received had the Department paid, at the time of the quick-take, the full amount to which Carriage Hills was ultimately found to be entitled.

Compensation for the loss of use of money in such circumstances is properly determined by the rate of interest. In determining the appropriate rate of interest to apply, the courts have relied most heavily on yields from high-grade corporate bonds and yields from government securities, such as Treasury Bonds. (See *Department of Transportation v. Rasmussen* (1982), 108 Ill. App. 3d 615, 629.) In this case, however, no evidence was presented regarding any such rates. Accordingly, the appellate court was right to remand the case for a new hearing on the interest rate that should be applied.

Carriage Hills next argues that the appellate court erred in reversing its award of attorney fees. Carriage Hills' position is that attorney fees should be compensa-

ble under the just compensation provisions of the Federal and State Constitutions. The Federal Constitution, however, provides no basis for the recovery of such fees. The United States Supreme Court has long held that attorney fees and expenses are not part of the just compensation to which a landowner is entitled under the takings clause of the fifth amendment. (See *United States v. Bodcaw Co.* (1979), 440 U.S. 202, 203, 59 L. Ed. 2d 257, 259, 99 S. Ct. 1066, 1066-67.) Carriage Hills urges us to reevaluate this holding, but we have no authority to do so. Where, as here, the interpretation of the Federal Constitution is involved, the United States Supreme Court is the final arbiter, and its holdings are binding on this and every other court in the land. See *People v. Loftus* (1948), 400 Ill. 432, 436.

There is also no support for an award of attorney fees under the Illinois constitution. Article I, section 15 (Ill. Const. 1970, art. I, § 15), guarantees just compensation "as provided by law." The phrase "As provided by law" means as prescribed or provided by the General Assembly. (See *Peile v. Skelgas, Inc.* (1993), 242 Ill. App. 3d 500, 518.) As the appellate court here correctly recognized, this indicates that attorney fees and expenses should not be allowed unless specifically authorized by statute. Because Illinois statutory law does not authorize attorney fees except in circumstances not relevant here (see Ill. Rev. Stat. 1991, ch. 110, pars. 7—111, 7—123), reimbursement of attorney fees is not required as part of just compensation under our constitution.

Carriage Hills raises various subsidiary challenges to the appellate court's judgment. We have considered them carefully and concluded that none merit further discussion by this court.

For the foregoing reasons, the judgment of the circuit court in cause Nos. 74738 and 74798 is affirmed in part and reversed in part, the judgment of the

appellate court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion. In cause No. 76434, the judgment is affirmed.

> *Nos. 74738 and 74798—Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded.*
> *No. 76434—Affirmed.*

JUSTICE NICKELS, dissenting:

I do not agree that the trial court erred in granting the landowners' motion *in limine* to exclude evidence of special benefits to the property not taken. Therefore, I respectfully dissent.

In the instant case, the condemning authority took a portion of landowners' property in order to construct wetlands to compensate for other wetlands destroyed by the highway project and for a utility easement. The measure of damages to property not taken is the difference in the fair market value of the property as a whole before and after the improvement and, in making this computation, special benefits accruing to the remaining parcel by reason of the improvement must be set off against the damages. *Department of Public Works & Buildings v. Divit* (1962), 25 Ill. 2d 93, 100-01 (citing *Kane v. City of Chicago* (1945), 392 Ill. 172, and *Capitol Building Co. v. City of Chicago* (1948), 399 Ill. 113.

The trial court and the appellate court both determined that the benefits attributed to the subject property's proximity to the highway were simply too remote to consider. In reversing, the majority determines that the benefits of the highway must be considered as a matter of law. In doing so, the majority engages in a questionable statutory construction analysis and ignores the broader factual basis for the trial court's ruling.

In making the determination that the trial court erred as a matter of law in granting landowners' motion *in limine*, the majority engages in a questionable analysis of the relevant sections of the Eminent Domain Act. Section 7—120 of the Act provides that "due consideration shall be given to any special benefit that will result to the property owner from any public improvement *** *on such property*." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 110, par. 7—120.) The majority first determines that because the compensatory wetlands and the easement were "necessary" to the highway project, they are as much a part of the project as the traffic lanes and interchanges. (162 Ill. 2d at 195.) Second, apparently insecure in resting judgement on the finding that the wetlands were a part of the highway project, the majority then determines that such a finding is not necessary because of language found in section 7—119. (162 Ill. 2d at 196, citing Ill. Rev. Stat. 1991, ch. 110, par. 7—119.) I disagree with the majority on both points.

The Eminent Domain Act, as legislation designed to protect individual constitutional rights from governmental overreaching, must be strictly construed. (*Ayer v. City of Chicago* (1894), 149 Ill. 262, 271.) There can be no dispute that section 7—120 unambiguously states that only those special benefits that result from the "public improvement to be erected on such property" need be considered. (Ill. Rev. Stat. 1991, ch. 110, par. 7—120.) It is also undisputed that only the compensatory wetlands and a utility easement are on landowners' property. The highway itself is some 500 feet from landowners' property and separated by the wetlands. Given the language of section 7—120, I see no error in excluding evidence concerning benefits to the landowner from a highway so removed. See *Illinois State Toll Highway Authority v. Itasca Bank & Trust Co.* (1991), 216 Ill. App. 3d 926 (finding that evidence of special benefits of

a highway project should have been excluded where no part of landowner's property was taken for the highway, but instead the property was taken for "off alignment improvements" deemed necessary for the project).

As additional support for finding error in the exclusion of evidence concerning special benefits from the highway, the majority also relies on section 7—119. Section 7—119 provides that evidence is admissible as to "any benefit to the landowner that will result from the public improvement for which the eminent domain proceedings were instituted." (Ill. Rev. Stat. 1991, ch. 110, par. 7—119.) The majority claims that, under this "clear and unambiguous" language, evidence of special benefits is admissible regardless of where the improvement is located. 162 Ill. 2d at 196.

I do not agree that the language of section 7—119 is clear and unambiguous. That section fails to differentiate between special benefits that are admissible and general benefits which are not admissible. (*Capitol Building Co.*, 399 Ill. at 119.) In contrast, section 7—120 expressly refers to "special benefits" and has the additional element that such benefits result from the public improvement to be erected on the property taken. Section 7—120 is clear and unambiguous, section 7—119 is not. I also fail to see how the existence of section 7—119 allows the majority to simply ignore the more specific requirements of section 7—120. Accordingly, I do not agree with the construction of this statute proffered by the majority.

In addition to conducting a strained and ultimately unsatisfying statutory construction analysis, the majority also fails to acknowledge the broader factual basis for the trial court's ruling. Special benefits are those aspects of the proposed improvement that appreciably enhance the market value of the remainder. (*Department of Public Works & Buildings v. Griffin*

(1923), 305 Ill. 585, 591.) Such special benefits must be "real and substantial, not chimerical and speculative, and must be capable of measurement and computation." (*Divit*, 25 Ill. 2d at 100-01.) As such, a trial judge must be vested with discretion to determine whether the condemning authority has provided a sufficient foundation for consideration of such benefits.

I do not agree that the trial court abused its discretion in excluding evidence concerning special benefits to the remainder. Condemnor's appraisers testified that damage to the remainder was fully offset by the proximity of the subject property to the toll road interchange located some 500 feet away. In excluding this testimony, the trial judge reasoned that the wetland project did not provide a sufficient "nexus" to the rest of the highway project. Given that landowners' property was situated at such a distance from the highway and separated by wetlands, I believe the trial court properly determined that any such benefits were too remote and speculative to be considered. Thus, the majority fails to acknowledge the broader factual basis for the trial court's ruling.

In closing, I wish to express my view that condemnation proceedings present a unique circumstance under the law deserving careful consideration. The legal confiscation and forced sale of a landowner's property places the landowner up against the vast resources of the government. Landowners are forced to hire attorneys and experts in order to protect their interests, which reduces their actual recovery. In such a situation, the potential for overreaching by the government is apparent. In my view, such circumstances require a condemning authority to show that the right to reduce damages to the remainder with evidence of special benefits be free from doubt.

Under the clear language of section 7—120 and the facts of this case, I believe that the condemning author-

ity has failed to show the necessary prerequisites for reducing damages to the remainder with evidence of special benefits. Therefore, I would affirm the rulings of the trial and appellate courts excluding evidence of special benefits in the present case.

CHIEF JUSTICE BILANDIC and JUSTICE McMOR-ROW join in this dissent.